STERLING FEDERAL SYSTEMS, INC., Appellant,

v.

Daniel S. GOLDIN, Administrator, National Aeronautics and Space Administration, Appellee.

No. 92–1552.

United States Court of Appeals, Federal Circuit.

Jan. 28, 1994.

Alan I. Saltman, Saltman & Stevens, P.C., of Washington, D.C., argued for appellant. With him on the brief was Kevin R. Garden.

Joan M. Bernott, Special Litigation Counsel, Commercial Litigation Branch, Department of Justice, of Washington, D.C., argued for appellee. With her on the brief were Stuart M. Gerson, Assistant Attorney General and David M. Cohen, Director.

Before ARCHER, MICHEL, and SCHALL, Circuit Judges.

ARCHER, Circuit Judge.

Sterling Federal Systems, Inc.[1] (Sterling) appeals from a decision of the General Services Administration (GSA) Board of Contract Appeals (GSBCA or board), *Sterling Federal Systems, Inc. v. National Aeronautics and Space Administration*, GSBCA No. 10000–C (9835–P), 92–3 BCA (CCH) ¶ 25,118, 1992 WL 115281 (May 22, 1992). The GSBCA refused to award Sterling expert consultant fees and employee salaries incurred in filing and successfully pursuing a procurement protest, except to the extent that the consultant and employees appeared as witnesses before the board. Because the board erred in holding that 40 U.S.C. § 759(f)(5)(C)(i) (1988) authorizes an award of only those costs that a federal court may allow under 28 U.S.C. §§ 1920, 1821 (1988) and attorney's fees, we vacate the decision and remand for a redetermination of entitlement.

## I.

On December 2, 1988, Sterling filed an administrative protest with the GSBCA, challenging the decision of the National Aeronautics and Space Administration to select another bidder for final contract negotiations for the procurement of automatic data processing equipment. *See* 40 U.S.C. § 759(f) (1988). Because the protest involved sensitive procurement information and proprietary information furnished by the parties, the board issued a protective order on December 9 that precluded Sterling's personnel from viewing any documents marked protected that were submitted by another party to Sterling's counsel or to the board. The effect of this order was to prevent Sterling's personnel from assisting Sterling's counsel in pursuing the protest. As a substitute for the technical expertise of Sterling's personnel, Sterling's counsel retained an independent expert consultant.

Eventually, Sterling prevailed. *Protest of Sterling Fed. Sys., Inc.*, GSBCA No. 9835–P, 1989 WL 20316 (Mar. 6, 1989) (protected material disclosable only in accordance with board order) (notice of decision published at 89–2 BCA ¶ 21,662). On April 5, 1989, Sterling filed a Motion for Award of Protest Costs and Attorneys' Fees pursuant to the Competition in Contracting Act of 1984, 40 U.S.C. § 759(f)(5)(C) ("CICA").[2] The CICA provides in relevant part:

> Whenever the board [determines that a challenged agency action violates a statute or regulation or the conditions of any delegation of procurement authority], it may ... further declare an appropriate interested party to be entitled to the costs of—
>
> (i) filing and pursuing the protest, including reasonable attorney's fees, and
>
> (ii) bid and proposal preparation.

40 U.S.C. § 759(f)(5)(C).

Sterling sought to recover from the United States $598,908.34 in attorneys' fees and costs incurred in filing and successfully pursuing its protest. Sterling delineated these fees and costs as follows[3]: $397,515.25 for its attorneys' fees billed at an hourly rate; $154,503.43 for its attorneys' "out-of-pocket disbursements"[4]; and $46,888.86 for its "in-

---

1. As of this appeal, Sterling Federal Systems, Inc., had become Sterling Software (U.S.), Inc.

2. The Brooks Act, Pub.L. No. 89–306, 79 Stat. 1127 (1965), gave to the GSA the sole authority to procure automatic data processing equipment and services for federal agencies. The Brooks Act was amended by the Competition in Contracting Act of 1984, Pub.L. No. 98–369, § 2713(a), 98 Stat. 1175, 1182, *as amended by* Act of Oct. 18, 1986, Pub.L. No. 99–500, § 101(m) (Title VIII, § 821(b)(1)(B)), 100 Stat. 1783, 1783–342, to authorize the GSBCA to hear formally protest cases involving procurements under the Brooks Act.

3. As the board noted, the total sought exceeds the breakdown by 80 cents.

4. The attorneys' out-of-pocket disbursements are said to consist of the following:

| | |
|---|---|
| Travel (airfare, hotel, meals, car rental) | $ 22,951.39 |
| Court Reporters | $ 12,675.50 |
| Secretarial/Administrative Overtime | $ 8,159.00 |
| Photocopying | $ 4,666.35 |
| Computerized Legal Research | $ 3,204.27 |
| Facsimile Transmissions | $ 2,070.20 |
| Meals | $ 1,758.11 |
| Local Transportation | $ 1,543.65 |
| Federal Express | $ 1,193.79 |
| Long Distance Telephone Calls | $ 1,010.59 |
| Computer Rental | $ 578.00 |
| Courier/Messenger | $ 432.62 |
| Miscellaneous Supplies | $ 213.45 |

house labor expenses," meaning the full daily salaries of several of Sterling's employees who participated in the protest.[5]

In a 7–4 decision, the GSBCA awarded Sterling all of its attorneys' hourly-billed fees, awarded Sterling all of its attorneys' out-of-pocket disbursements except for the expert consultant costs, and denied Sterling the costs of its salaried employees. The GSBCA did, however, permit an award of 30 dollars plus travel expenses for each day the consultant or an employee testified as a witness in the protest proceeding or was required to await attendance at the hearing.[6]

The board recognized that the award was a departure from its past practice in automatic data processing equipment procurement protests, which was to award as the costs of filing and pursuing the protest "all necessary and reasonable expenses incurred in doing so." 92–3 BCA at 125,219. The board stated that under this previous standard, it commonly awarded the full amount of expert consultant fees:

> We have ... consistently permitted recovery of the reasonable costs of expert consultants and witnesses.... Our earlier precedents so held, because, in many instances, the retention of one or more independent consultants is necessary for any effective pursuit of a protest.
>
> Typically in a protest, retained attorneys need someone knowledgeable in computer technology to explain an opponent's proposal. Such proposals nigh invariably involve proprietary and procurement sensitive information, which retained counsel

| Postage | $ | 22.00 |
| Expert Consultant's Fee | $ | 83,500.00 |
| Expert Consultant's Airfare | $ | 4,784.00 |
| Expert Consultant's Other Travel Expenses (hotel, meals, telephone, car rental) | $ | 5,740.51 |
| TOTAL | | $154,503.43 |

**5.** The in-house labor expenses are said to consist of the following:

| Direct labor costs of five persons | $ | 25,637.64 |
| Travel expenses | $ | 13,596.77 |
| Fringe cost of direct labor | $ | 7,549.52 |
| Miscellaneous expenses | $ | 104.93 |
| TOTAL | $ | 46,888.86 |

**6.** The precise amount was to be determined at a later time.

obtain under our protective order. The protected information is not of the sort that is particularly meaningful to the great majority of attorneys, who often lack the technical education or background to adequately evaluate such information. However, retained counsel cannot disclose this essential evidentiary material to their client or their clients' technical staffs, none of whom could qualify for access to such information under our protective orders.

Thus, in order to reasonably understand the facts of the protest, the attorney has no choice but to retain the services of expert consultants, who, being completely independent from the attorney's client, may obtain access to the protected material under the Board's standard protective order. In short, in protests involving a challenge to a competitor's proposal, retaining experts and consultants is frequently imperative.

*Id.*

The board believed, however, that it could not award expert fees under the CICA based on its interpretation of the recently issued Supreme Court decision in *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991). According to the board, *West Virginia* held "that the word 'costs,' appearing in fee-shifting statutes, is a term of art which means those taxable costs traditionally associated with ordinary litigation, as set out in 28 U.S.C. § 1920, and any additional costs must be identified as recoverable within the same fee-shifting statute." [7] 92–3 BCA at 125,220.

**7.** 28 U.S.C. § 1920 (1988) provides:
> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Because the CICA does not expressly include expert fees as "costs of . . . filing and pursuing the protest," the board allowed these fees only to the extent the expert consultant served as a witness as provided for in 28 U.S.C. § 1920(3) and § 1821.

As to whether the salaries of Sterling's employees could be allowed as costs, the board found that "*West Virginia* require[d] [the board] to change [its] long-time practice and deny reimbursement of these salaries." 92–3 BCA at 125,221. The board also considered that the GSBCA's and other boards' "long-standing practice" in cases involving the administrative Equal Access to Justice Act (EAJA), 5 U.S.C. § 504 (1988),[8] which expressly describes several types of awardable costs in detail, was to deny salaries as well. Accordingly, the board allowed costs for the employees only to the extent the employees served as witnesses as provided for in 28 U.S.C. § 1920(3) and § 1821.

In two separate opinions, four of the judges of the board dissented to the denial of expert fees and in-house employee salaries. In one opinion, two of the judges argued that the CICA used the "ordinary meaning" of costs, which broadly included within its defi-

nition expert fees and employee salaries, although the judges did not offer a definite "ordinary meaning" for "costs." The judges argued that sections 1821 and 1920 limited only the federal courts and did not apply to the GSBCA. In a second opinion, three board judges argued further that the CICA broadly conferred on the board discretion to award various expenses including expert fees and employee salaries. The majority rejected the dissents' expansive interpretations of the CICA on the ground that the GSBCA may not "take actions that a court cannot," and that the GSBCA's power to shift costs was likely "less" than that of a court.

Sterling appeals from the board's entitlement decision.[9]

## II.

Sterling argues that the board erred as a matter of law in denying it expert fees and employee salaries by misconstruing the scope of the term "costs of . . . filing and pursuing the protest" within 40 U.S.C. § 759(f)(5)(C) in relation to the Supreme Court's decision in *West Virginia*. Sterling asserts that *West*

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920 (1988).

The fees for witnesses authorized by section 1920(3) are limited by 28 U.S.C. § 1821 (1988), which provides in relevant part:

(a)(1) . . . [A] witness in attendance at any court of the United States . . . shall be paid the fees and allowances provided by this section.

. . . .

(b) A witness shall be paid an attendance fee of $30 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance. . . .

(c)(1) A witness who travels by common carrier shall be paid for the actual expenses of travel. . . .

(2) A travel allowance . . . shall be paid to each witness who travels by privately owned vehicle. . . .

(3) Toll charges . . ., taxicab fares . . ., and parking fees . . . shall be paid in full to a witness incurring such expenses.

(4) All normal travel expenses . . . shall be taxable as costs pursuant to section 1920 of this title.

(d)(1) A subsistence allowance shall be paid to a witness . . . when an overnight stay is required at the place of attendance. . . .

. . . .

28 U.S.C. § 1821 (1988). After the witnesses had testified and the GSBCA issued its decision on the merits, Congress amended section 1821(b) to increase the attendance fee to $40 per day. Judicial Improvements Act of 1990, Pub.L. No. 101–650, § 314(a), 104 Stat. 5089, 5115. Nevertheless, in its award, the GSBCA used the $30 per day rate because it was the one in effect during the time the witnesses testified. *See* 92–3 BCA at 125,217 n. 2 (citing *Vincennes Steel Corp. v. Miller*, 94 F.2d 347, 351 (5th Cir.1938)). In its appeal, Sterling does not challenge the rate applied by the board.

8. 5 U.S.C. § 504(a)(1) authorizes an award of "fees and other expenses" under appropriate circumstances. That term is defined in subsection (b)(1)(A) to "include[ ] the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found . . . to be necessary for the preparation of the party's case, and reasonable attorney or agent fees."

9. In this appeal, the government has not challenged any of the items that the GSBCA awarded Sterling.

*Virginia* is inapposite, and that "costs" in 40 U.S.C. § 759(f)(5)(C) plainly means those reasonable expenses necessarily incurred in litigation—specifically, in filing and pursuing a protest. Sterling also points to the board's past practice of awarding expert fees and employee salaries.

The government argues that, under *West Virginia*, the "costs" appearing in the CICA is a term of art which means those costs listed in 28 U.S.C. § 1920 and § 1821. It is undisputed that section 1920 and section 1821 do not permit an award of expert fees or employee salaries, except for a limited amount for such persons' service as witnesses. In support of its "narrow" interpretation of the CICA, the government points out that what is involved here are costs awarded against the United States so that the CICA is a waiver of sovereign immunity. The government states that because the statute is a waiver of sovereign immunity, it must be read strictly in favor of the government.

The CICA provides that the board "may" declare an interested party to be entitled to costs. 40 U.S.C. § 759(f)(5)(C). We review a declaration of entitlement by the board under this permissive cost-shifting statute for an abuse of discretion. *See Pierce v. Underwood*, 487 U.S. 552, 559–63, 108 S.Ct. 2541, 2547–49, 101 L.Ed.2d 490 (1988); *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 232, 85 S.Ct. 411, 415, 13 L.Ed.2d 248 (1964); 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2668 (1983) (hereinafter "Wright & Miller"). We have said that an agency abuses its discretion where its "decision (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact findings; or (4) follows from a record that contains no evidence on which the [agency] could rationally base its decision." *Gerritsen v. Shirai*, 979 F.2d 1524, 1529 (Fed.Cir.1992). In determining whether the GSBCA has abused its discretion by allowing or disallowing costs we may freely review questions of law raised by the board's entitlement determination. 41 U.S.C. § 609(b) (1988) (decisions of board on questions of law are not "final or conclusive"); *Aviation Contractor Employees, Inc.*

*v. United States*, 945 F.2d 1568, 1571 (Fed. Cir.1991) (questions of law decided by board are freely reviewable); *see United States v. Compusearch Software Sys.*, 936 F.2d 564, 565–66 (Fed.Cir.1991) (reviewing legal issues raised by award under the CICA *de novo*); *cf. Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402, 110 S.Ct. 2447, 2459, 110 L.Ed.2d 359 (1990) (error of law underlying an award of Rule 11 sanctions constitutes abuse of discretion and is freely reviewable). In this case the board's entitlement determination was based on a construction of the CICA and of other cost-shifting statutes, and an interpretation of Supreme Court case law. These being matters of law, we review them *de novo*.

Under the principle of sovereign immunity costs or expenses may not be awarded against the United States in the absence of a statute directly authorizing such an award. *United States v. Chemical Found., Inc.*, 272 U.S. 1, 20, 47 S.Ct. 1, 8, 71 L.Ed. 131 (1926); *see also United States v. Idaho*, —— U.S. ——, ——, 113 S.Ct. 1893, 1897, 123 L.Ed.2d 563 (1993). Moreover, because such a statute waives sovereign immunity, it "must be strictly construed in favor of the United States, and not enlarged beyond what the language of the statute requires." *Idaho*, —— U.S. at ——, 113 S.Ct. at 1896 (quotations and citations omitted); *see Library of Congress v. Shaw*, 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986); *Bennett v. Department of the Navy*, 699 F.2d 1140, 1144 (Fed.Cir.1983).

At the outset we note that the statutory provisions construed by the Supreme Court in *West Virginia* are not directly applicable to the GSBCA. Sections 1920 and 1821 of Title 28, United States Code, authorize the "court[s] of the United States" to tax certain items as costs. The GSBCA is not a "court of the United States." 28 U.S.C. § 451 (1988). Therefore, sections 1920 and 1821 by their terms do not cover the GSBCA. Section 759(f)(5)(C) of Title 40 authorizes the GSBCA to "declare an appropriate interested party to be entitled to the costs of (i) filing and pursuing the protest, including reasonable attorney's fees, and (ii) bid and proposal preparation." The CICA does not expressly

incorporate section 1920 by reference, as does for example the EAJA cost-shifting provision, 28 U.S.C. § 2412(a) (1988).

We thus turn to the government's argument that "costs" is a term of art that means those costs listed in 28 U.S.C. § 1920, or, phrased another way, that 28 U.S.C. § 1920 codifies those costs that are "traditional" litigation costs. The history of "costs" is lengthy and detailed, but the following is a brief overview.[10] Although the allowance of costs did not exist at common law, they were made recoverable by statute in England, since at least the year 1275. The English practice of cost recovery has always been expansive, with a view to reimbursing the prevailing party totally. In the United States, the states also permitted cost recovery by statute, and at first generally adopting the English practice of extensive reimbursement, although not quite fully. In the federal system, from 1789 to 1799, various Congressional enactments permitted the federal courts to follow the practice of the states in which the courts were located. By 1799, this legislation had expired; yet the federal courts continued to follow the practice of the respective states until 1853. In that year, because of what was perceived to be "exorbi-tant" and diverse practice in the federal courts, Congress standardized the costs allowable in federal courts by enacting far-reaching legislation specifying in detail the nature and amount of taxable items of cost recoverable in the federal courts. The 1853 Act has been carried forward without change in substance into 28 U.S.C. § 1920, which allows federal courts to tax costs today.

It is clear from history, therefore, that 28 U.S.C. § 1920 does not codify a traditional definition of costs. Rather, it is one source of historically many sources of statutory authority for, as well as a limitation on, taxable litigation costs; specifically, those "costs" recoverable in the courts of the United States.

The government argues, and the board found, that the Supreme Court determined in *West Virginia* that "costs" must always be

interpreted to mean those costs listed in 28 U.S.C. § 1920. We do not agree. *West Virginia* relied upon *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). In *Crawford Fitting,* the Supreme Court considered the relationship between 28 U.S.C. § 1920 and Rule 54(d) of the Federal Rules of Civil Procedure, which provides in part that "costs shall be allowed as of course to the prevailing party." The question at issue in *Crawford Fitting* was whether a federal court could award under Rule 54(d) costs for testifying witnesses in excess of the 30 dollars per day provided for in 28 U.S.C. § 1920 and § 1821. The Court held that federal courts could not do so, reasoning that, based on its history, section 1920 set forth "Congress' considered choice as to the kinds of expenses that a federal court may tax as costs against the losing party." *Id.* at 440, 107 S.Ct. at 2496; *see also Henkel v. Chicago, St. Paul, Minneapolis & Omaha Ry.,* 284 U.S. 444, 446, 52 S.Ct. 223, 224, 76 L.Ed. 386 (1932). According to the Court, if Rule 54(d) conferred broader authority than section 1920, it would render section 1920 superfluous, effectively constituting a repeal by implication. 482 U.S. at 441–42, 107 S.Ct. at 2497–98. Because such repeals are disfavored, the Court concluded that authority for a federal court to shift costs beyond those in section 1920 must be express. *Id.* at 444–45, 107 S.Ct. at 2498–99.

In *West Virginia,* the Supreme Court decided the question whether a federal court could award the fees of non-testifying experts under 42 U.S.C. § 1988 (1988), which permitted the recovery of "a reasonable attorney's fee as part of the costs." The Court held that federal courts could not. Citing *Crawford Fitting,* the Court began with the proposition that 28 U.S.C. § 1920 and § 1821 "define the full extent of a federal court's power to shift litigation costs absent express statutory authority to go further." 499 U.S. at 86, 111 S.Ct. at 1141. Neither section 1920 nor section 1821 authorized a federal court to shift non-testifying expert fees. *Id.*

---

**10.** Our discussion is based on the excellent treatment in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247–57, 95 S.Ct. 1612, 1616–21, 44 L.Ed.2d 141 (1975), as well as in A.

Goodhart, *Costs,* 38 Yale L.J. 849 (1929); 20 Am.Jur.2d (1965); C. McCormick, Handbook on the Law of Damages § 60 (1935); and 10 Wright & Miller, *supra,* § 2665, at 169–71.

at 87, 111 S.Ct. at 1141. Thus the precise question before the Court was whether the authorization in 42 U.S.C. § 1988 for a federal court to shift a reasonable "attorney's fee" provided the explicit statutory authority required to shift costs beyond those authorized by § 1920 and § 1821. *Id.* The Court concluded it did not, holding that historically and in view of many other cost-shifting statutes "attorney's fees and expert fees are regarded as separate elements of litigation cost." *Id.* at 88, 111 S.Ct. at 1141. In a footnote the Court rejected the suggestion of Justice Stevens, who dissented, that expert fees may be part of the "costs" referred to in section 1988. *Id.* at 87 n. 3, 111 S.Ct. at 1141 n. 3. Relying on *Crawford Fitting*, the Court stated that there was no reason to interpret "the costs" referred to in 42 U.S.C. § 1988 as having a meaning different from and more broad than the "costs" permitted to be awarded by 28 U.S.C. § 1920 and § 1821. *Id.*

We are convinced that the rationale of *West Virginia* and *Crawford Fitting* does not control this case. Section 1920, while providing the foundational authority for cost shifting in the federal courts, does not undergird the GSBCA's cost-shifting authority. Rather, the CICA alone is that authority and it both establishes and limits the cost-shifting authority of the GSBCA entirely apart from section 1920. If the CICA's allowable costs are different from or broader than section 1920's costs, the vitality of section 1920 as applied to a "court of the United States" is not in any way diminished. Thus, the rule of *Crawford Fitting* that a statute must expressly authorize costs other than those provided for in section 1920 is entirely inapplicable. Furthermore, the CICA, unlike 42 U.S.C. § 1988 at issue in *West Virginia* and Rule 54(d) at issue in *Crawford Fitting*, does not merely refer to the "costs." Rather the CICA provision at issue in this case is con-

text-specific, permitting an award of the "costs of . . . filing and pursuing" a procurement protest.

In addition, *West Virginia* primarily involved attorney's fees, which is a discrete category of litigation cost. *See* 499 U.S. at 92–97, 111 S.Ct. at 1143–46; *accord Bennett*, 699 F.2d at 1143–46 ("attorney fees" does not comprise "costs"). "Costs," however, historically and in usage is not well circumscribed. For example, in the many statutes cited in *West Virginia* various types of expenses are expressly included within the category "costs." *See* 499 U.S. at 88–91, 111 S.Ct. at 1141–43. The Supreme Court in *West Virginia*, although holding that "expert fees" are not an element of attorney's fees, stated that "expert fees" are regarded as an "element[ ] of litigation *cost.*" *Id.* at 88, 111 S.Ct. at 1141 (emphasis added).[11]

Having reviewed the history of section 1920 and the usage of "costs," and the *West Virginia* and *Crawford Fitting* cases, we cannot agree with the board that *West Virginia* stands for the very broad proposition that the word "costs" appearing in any cost-shifting statute must be limited to those taxable costs set out in 28 U.S.C. § 1920. Furthermore, such an interpretation would place an undue burden on Congress. In order to shift costs in settings markedly different from federal court, it would require Congress either to avoid the word "costs" or to set forth expressly each cost item it intended to cover beyond those limited costs encompassed within section 1920.[12]

The board also relied on the provisions of the EAJA applicable in adversary adjudications in administrative agencies, 5 U.S.C. § 504, to conclude that the CICA was limited to those costs enumerated in section 1920. However, consideration of the provisions of the EAJA applicable in federal court, 28 U.S.C. § 2412, in conjunction with EAJA

11. In addition, the Federal Acquisition Regulations and agency supplements which apply to government contracts use the word "costs" extensively to describe items that would not be covered by 28 U.S.C. § 1920. *See, e.g.,* 48 C.F.R. §§ 30, 31.

12. This is not a mere hypothetical concern. After *West Virginia* and *Crawford Fitting*, Congress

was required to enact legislation providing express authority in order for federal courts to award expert fees under 42 U.S.C. § 1988. *See* Civil Rights Act of 1991, Pub.L. No. 102–166, §§ 2(3), 3(4), 113(a), 105 Stat. 1071, 1071, 1079; H.R.Rep. No. 102–40(I), 102d Cong., 1st Sess. 77–78, *reprinted in* 1991 U.S.C.C.A.N. 549, 615–16.

§ 504, leads us to just the opposite conclusion about the CICA. In EAJA § 2412, Congress delineated three categories of award: "costs, as enumerated in [28 U.S.C. § 1920]," 28 U.S.C. § 2412(a); "fees and other expenses, in addition to any costs awarded pursuant to subsection (a)," *id.* § 2412(d)(1)(A); and "reasonable fees and expenses of attorneys," *id.* § 2412(b). In EAJA § 504, Congress used only a "fees and other expenses" category. "It is ... clear that when Congress mean[s] to set a limit on fees, it kn[ows] how to do so." *Crawford Fitting*, 482 U.S. at 442, 107 S.Ct. at 2498. Thus, Congress's failure in the administrative EAJA § 504 to incorporate 28 U.S.C. § 1920, as it did in EAJA § 2412, indicates Congress's deliberate choice not to have section 1920 apply in the agency context.[13] Similarly, Congress's use simply of "costs" in the CICA, and failure to specify particular costs as in EAJA § 504, or to specify section 1920 costs and other particular ones as in EAJA § 2412, indicates that Congress intended a general allowance of litigation expenses in CICA over application of section 1920 or a detailed list of costs.

 The last and most persuasive indication that "costs" does not mean those costs provided for in section 1920 is that such a definition would not make sense in subsection (ii) of 40 U.S.C. § 759(f)(5)(C). Parsing section 759(f)(5)(C) we note that it uses the word "costs" once and has two clauses, subsections (i) and (ii), dependent on that word. Subsection (i) permits the costs of "filing and pursuing the protest." Subsection (ii) permits the costs of "bid and proposal preparation." Both parties agree that section 1920's provisions, such as "[f]ees of the clerk and marshal," could not be applicable to subsection (ii). The government argues subsection (ii) is not now at issue and therefore it need not be considered. The board did not discuss subsection (ii) and seems to have accepted the government's argument. However, a basic rule of statutory construction is that the whole of the statute should be considered in ascertaining the meaning of language therein. 2A Sutherland Statutory Construction

§ 46.05 (5th ed. 1992). And language of a section of a statute should not be construed so as to render other language in that section nonsensical. *Id.* § 46.06. This basic rule is particularly applicable where two clauses depend on the single term at issue. In such circumstances one clause cannot be ignored just because it is not specifically at issue.

Given that we must consider subsection (ii) in seeking the proper interpretation of the word "costs," the government further maintains that subsection (ii) is not limiting because "costs" can be given a different meaning for each subsection. In the government's view, "costs" means for subsection (ii) reasonable and necessary expenses, which might include expert fees and employee salaries, but means for subsection (i) those costs enumerated in section 1920. The government argues that we should construe the statute in this "narrow" way because the statute is a waiver of sovereign immunity. We disagree. The rule requiring strict construction of waivers of sovereign immunity is not a talisman that permits the government to avoid liability in all cases. "[J]ust as we should not take it upon ourselves to extend the waiver beyond that which Congress intended, neither, however, should we assume the authority to narrow the waiver that Congress intended." *Idaho*, —— U.S. at ——, 113 S.Ct. at 1896 (quotations and alterations omitted). Accordingly, we will not contort the language of this waiver of sovereign immunity to give one word appearing once in one sentence two dramatically different meanings depending on whether the beginning or the end of the sentence is read.

 Finally, we do not agree with the board's view that it cannot have the power to shift expert fees and employee salaries because other tribunals do not, or that the board's power must always be "less" than that of the federal courts. Although the board's power is limited to that power expressly granted by statute and does not include the "inherent authority of federal courts," *ViON Corp. v. United States*, 906

---

13. As another example of this, compare 26 U.S.C. § 7430(c)(1) (1988), defining taxable "reasonable litigation costs," with subsection (c)(2), which defines taxable "reasonable administrative costs" and does not include within that definition "court costs."

F.2d 1564, 1566–67 (Fed.Cir.1990); *see SMS Data Prods. Group, Inc. v. Austin,* 940 F.2d 1514, 1517 (Fed.Cir.1991), this does not require or justify the board's generalization that its authority in every aspect must be "less" than a federal court's power; rather, the most that can be said is that the board's authority is different.[14] And though uncommon, we note that the CICA would not be unique in permitting a shift of non-testimonial expert fees. *See West Virginia,* 499 U.S. at 90–91, 111 S.Ct. at 1142–43 [15]; *cf. Idaho,* —— U.S. at ——, 113 S.Ct. at 1896 ("costs" in the context of 43 U.S.C. § 666(a) (1988) may include state filing fees for notices of claims).[16]

■ For all of the foregoing reasons, we hold that the board erred as a matter of law in construing the language "costs of . . . filing and pursuing the protest" in 40 U.S.C. § 759(f)(5)(C)(i) (1988) as limiting the board's authority to award only those costs specified in 28 U.S.C. § 1920 and § 1821.

### III.

■ The CICA in 40 U.S.C. § 758(f)(5)(C)(i) allows the "costs of . . . filing and pursuing the protest." When the word "costs" is used in this context it still is necessary to determine what costs should be covered.

The board indicated that it previously interpreted the CICA's "costs" as meaning "all necessary and reasonable expenses" incurred in filing and pursuing a protest. Sterling states that expert fees and employee salaries fell within this definition under board practice before the decision in this case, and that since this case was decided wrongly, such costs should continue to be allowable. Ster-

ling would therefore have this court hold that Sterling is entitled in this case to recover its expert fees and employee salaries.[17] In support, Sterling states that the CICA was intended to "make whole" the prevailing protester in order to provide an incentive for vindication of procurement rights and thereby to promote efficient competition in procurement. *See Compusearch Software,* 936 F.2d at 566; *NCR Comten, Inc.,* GSBCA No. 8229, 86–2 BCA ¶ 18,822, 1986 WL 19656 (1986); H.R.Rep. No. 98–861, 98th Cong., 2d Sess. 1430 (1984), *reprinted in* 1984 U.S.C.C.A.N. 1445, 2118. From this, Sterling asserts that the GSBCA must permit it to recoup its expert fees and in-house expenses in order to make it whole and be faithful to legislative purpose.

The government does not challenge Sterling's characterization of the board's past practice. The government responds, however, by arguing that a rule allowing all conceivable litigation expenses until a protester is restored to "wholeness" would be boundless, and might include such speculative costs as lost opportunity and lost profits caused by an allegedly defective procurement. Such a rule, argues the government, would be destructive of efficient procurement and counter to legislative purpose.

■ Each party's position has force: In theory costs are awarded to compensate a successful party for incidental damages incurred in asserting legal rights when the need for such litigation was caused by the other party's breach of a legal duty. 20 Am.Jur.2d *Costs* § 1, at 5 (1965). In that type of case an award of costs "makes whole" the wronged successful party, thereby en-

---

**14.** Subsection (ii) of 40 U.S.C. § 759(f)(5)(C) underscores the non-traditional nature of procurement protest litigation.

**15.** The Supreme Court cited the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) and 5 U.S.C. § 504(b)(1)(A); the Tax Equity and Fiscal Responsibility Act of 1982, 26 U.S.C. § 7430(c)(1); the Criminal Justice Act of 1964, 18 U.S.C. § 3006A(e); the Regional Rail Reorganization Act of 1973, 45 U.S.C. §§ 726(f)(9), 741(i); and the Railroad Revitalization and Regulatory Reform Act of 1976, 45 U.S.C. § 854(g), as permitting such a shift.

**16.** Also, the dissenting judges of the GSBCA in this case indicated that the General Accounting Office has permitted an award of employee salaries and expert fees. 92–3 BCA at 125,223 n. 2 (citing *National Test Pilot–School—Claim for Costs,* GAOBCA No. B–237503.4, 91–2 CPD (Fed.Publications) ¶ 488, 1991 WL 270359 (Nov. 25, 1991)).

**17.** There appears to be no dispute that the expert fees and employee salaries Sterling seeks are "reasonable" and were "necessary."

couraging vindication of legal rights.[18] On the other hand, "reimburs[ing] a winning litigant for every expense he has seen fit to incur in the conduct of his case" would allow and indeed spur litigation costs so high as to discourage agencies of the United States from defending otherwise meritorious and legitimate decisions. *See Farmer v. Arabian Am. Oil Co.,* 379 U.S. 227, 235, 85 S.Ct. 411, 415, 13 L.Ed.2d 248 (1964). This concern is exacerbated under a statutory cost-shifting scheme such as the CICA that is unidirectional. Because there is no provision in the CICA for a losing protester to bear the litigation costs of the United States, it places no risk of loss on the would-be protester and therefore provides no disincentive to unjustified litigation.[19] Accordingly, not every litigation expense, even if reasonable and necessarily incurred in litigation, should be borne by one's adversary.

In view of the statutory language and context of the CICA, each side's argument persuades us to the same result. When Congress enacted the CICA, it expressly recognized that it was establishing a "unique and innovative method of handling protests of a highly technical and complex nature." H.R.Rep. No. 98–861, at 1431, *reprinted in* 1984 U.S.C.C.A.N. at 2119. In stark contrast to the statute at issue in *Crawford Fitting,* where the Supreme Court remarked that the "comprehensive scope of [28 U.S.C. § 1920] and the particularity with which it was drafted demonstrated ... that Congress meant to impose rigid controls on cost-shifting," 482 U.S. at 444, the CICA demonstrates to us, by providing that the GSBCA may shift nonparticularized costs of litigation and bid and proposal preparation, that Congress has entrusted the GSBCA with some discretion to

define precisely what those costs are. *See also* 20 Am.Jur.2d *Costs* § 52, at 41 ("Where the statute does not define the items of recoverable costs, the allowance or disallowance of particular costs is confided primarily to the discretion of the trial court...."); *Sterling Federal,* 92–3 BCA at 125,224 (Vergilio, B.J., joined by Suchanek, C.B.J., and LaBella, B.J., dissenting in part). In this way, Congress has ensured a balancing of the competing policies of encouraging litigation of procurement conflicts and cabining litigation costs. Furthermore, we note that in addition to the GSBCA's status as the trial forum, it is also part of an administrative agency. Thus, Congress's failure to use costs-specific language in the CICA is consistent with a delegation of some discretion to the GSBCA to resolve the aforementioned competing policies. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 865–66, 104 S.Ct. 2778, 2792–93, 81 L.Ed.2d 694 (1984).

Prior to its decision in the instant case, the GSBCA did in fact award costs guided by, among other things, the consideration that the purpose of the CICA

> was to encourage private enforcement of the laws and regulations mandating the acquisition of general purpose automatic data processing equipment and services through full and open competition, and to open the "federal marketplace to all responsible computer companies."

*Computer Marketing Corp.,* GSBCA No. 8276–C(8131–P), 87–1 BCA ¶ 19,405, at 98,-120, 1986 WL 20765 (1986). And the purpose of the cost-shifting provision of the CICA was to maximize efficiency in procurement:

---

**18.** Beyond "making whole" the prevailing party, the shifting of litigation costs has been characterized as a means of controlling litigation, of "discouraging unfair and unnecessary litigation" and "preventing prolixity, delay, misjoinder of parties, the demand for the production of undisputed evidence, and the taking of appeals as a matter of course." A. Goodhart, *Costs,* 38 Yale L.J. 849, 862 (1929). Goodhart recognizes that abuse of the legal process would follow from unbounded discretion. *Id.* at 877.

**19.** Professor McCormick, in his treatise on damages, notes several arguments against unduly expansive awards of costs. Adapted to the context

of the CICA, they include the following: first, certain expenses are too "remote" in relation to the injury complained of; second, for certain types of expenses administratively it may be impracticable to determine whether they are of a "reasonable" amount; third, compensation is unwarranted where there is reasonable doubt as to the validity of the claim such that the conduct of defending against the claim is not unjustified; and fourth, it is undesirable to discourage judicial pronouncement resolving meritorious disputes. *See* C. McCormick, Handbook on the Law of Damages § 71 (1935).

[T]he purpose of fee-shifting provisions generally is to relieve parties with valid claims of the burden of vindicating the public interests which Congress seeks to promote; these provisions are not intended as rewards for prevailing parties or as penalties to be imposed on the losing party.

*Id.* at 98,122.

In contrast to what Sterling says, we do not perceive the GSBCA's law on what it had previously allowed as well settled. In *Computer Marketing Corp.*, 87–1 BCA at 98,122, the GSBCA held that 28 U.S.C. §§ 1920 and 1821 clearly do not apply to the GSBCA; yet for practical and policy reasons, the board held that "the costs that [it] may reimburse to prevailing parties in protests may not exceed the costs that would be reimbursed as taxable costs" under sections 1920 and 1821. In that case the GSBCA disallowed fees of experts except to the extent they would be compensated as testifying witnesses pursuant to section 1821. The GSBCA distinguished an earlier case awarding the full daily salaries of employees, *NCR Comten, Inc.*, GSBCA No. 8229, 86–2 BCA ¶ 18,822, at 94,848–50, 1986 WL 19656 (1986), on the ground that the earlier case involved costs of bid and proposal *preparation* under subsection (ii) of the CICA.

But then in *Grammco Computer Sales, Inc.*, GSBCA No. 9049C(8940–P), 88–2 BCA ¶ 20,691, at 104,581, 1988 WL 56069 (1988), the board stated it "does permit the recovery of personnel costs for salaried employees when incurred in conjunction with filing and pursuing a protest" and cited *Genasys Corp.*, GSBCA No. 8841–C(8734–P), 87–2 BCA ¶ 19,726, 1987 WL 40806 (1987) and *MBI Business Centers, Inc.*, GSBCA No. 8560–C(8427–P), 87–2 BCA ¶ 19,702, 1987 WL 40694 (1987). The board distinguished its decision in *Computer Marketing* as involving personnel or experts actually serving as witnesses where the costs recoverable are limited by section 1821. Effectively, therefore, the GSBCA in *Grammco* rejected the statement in *Computer Marketing* that the board would follow section 1920 in awarding costs of filing and pursuing the protest.

Consequently, Sterling is correct that if the board were to apply the practice stated in *Grammco* to this case, Sterling would likely recover substantial expert fees and employee salaries. However, because it appears that Sterling's expert consultant and some of its employees may have served as witnesses, we disagree with Sterling that all of its expert fees and employee salaries would have been recoverable under past board practice.

As we have held, the Supreme Court's decision in *West Virginia* and the cost-shifting statute applicable in the courts of the United States, 28 U.S.C. § 1920, do not preclude the GSBCA from awarding under the CICA employee salaries or expert fees incurred in filing and pursuing a protest. But neither does the CICA expressly require the GSBCA to do so. Accordingly, the board's *Grammco* practice is not statutorily required. In view of the board's past practice, however, to deny Sterling the expert fees and employee salaries it seeks in this case, the GSBCA must either distinguish these costs from those awarded under previous cases or justify a change in practice. *See Etelson v. Office of Personnel Management*, 684 F.2d 918, 926–27 (D.C.Cir.1982); *Brennan v. Gilles & Cotting, Inc.*, 504 F.2d 1255, 1264 (4th Cir. 1974); *NLRB v. International Union of Operating Eng'rs*, 460 F.2d 589, 604 (5th Cir. 1972). The GSBCA did not consider the allowability of these fees and salaries in this case due to its application of the perceived *West Virginia* restrictions, except to the extent of allowing testifying witness fees. We must, therefore, vacate the decision below and permit the GSBCA to decide in the first instance which if any of such expert or employee costs should be allowed. In this regard, the GSBCA, in determining the allowability of particular costs, should, as it has done in the past, analyze and weigh the relevant factors, including the reasonableness and relevance of such costs to "filing and pursuing the protest," the extent to which such costs have been and are awarded by agencies and courts under other cost-shifting statutes, the promotion of efficiency in the procurement process, and the like.

## CONCLUSION

The decision of the GSBCA is vacated, and the case is remanded for a redetermination consistent with this opinion of Sterling's allowable costs of filing and pursuing its protest.

## COSTS

As to this appeal each party is to bear its own costs.

*VACATED* and *REMANDED*.