# United States Court of Appeals for the Federal Circuit

---

**HARTFORD FIRE INSURANCE COMPANY,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-1585

---

Appeal from the United States Court of International Trade in No. 07-CV-00067, Judge Donald C. Pogue.

---

Decided: December 1, 2014

---

FREDERIC D. VAN ARNAM, JR., Barnes, Richardson & Colburn, LLP, of New York, New York, argued for plaintiff-appellant. With him on the brief was HELENA D. SULLIVAN.

JASON M. KENNER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were STUART F. DELERY, Assistant Attorney General, and JEANNE E. DAVIDSON, Director, of Washington, DC, and AMY M. RUBIN, Acting Assistant Director, International Trade Field Office, of New York, New York. Of counsel on the brief was BETH

C. BROTMAN, Office of Assistant Chief Counsel, United States Customs and Border Protection, of New York, New York. Of counsel was JUSTIN REINHART MILLER, Attorney, United States Department of Justice, of New York, New York.

––––––––––––––

Before LOURIE, PLAGER, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant Hartford Fire Insurance Company ("Hartford") appeals the final judgment of the United States Court of International Trade ("CIT") dismissing its action for failure to state a claim for which relief can be granted. *See Hartford Fire Ins. Co. v. United States*, 918 F. Supp. 2d 1376 (Ct. Int'l Trade 2013). Because Hartford has failed to plead sufficient factual matter to "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted), this court affirms.

BACKGROUND

Between July 30, 2003, and August 31, 2003, Sunline Business Solution Corporation ("Sunline") imported into the United States eight entries of freshwater crawfish tailmeat from Chinese producer Hubei Qianjiang Houhu Frozen (the "Hubei Entries"). The Hubei Entries were subject to an antidumping duty order covering freshwater crawfish tailmeat from China. *See Freshwater Crawfish Tail Meat from the People's Republic of China*, 62 Fed. Reg. 48,218 (Dep't of Commerce Sept. 15, 1997) (notice of amendment to final determination of sales at less than fair value and antidumping duty order) ("the Order").

The Hubei Entries were entered following approval from United States Customs and Border Protection ("Customs") of eight single-entry bonds that covered the estimated antidumping duties on the Hubei Entries and

designated Hartford as the surety. Hubei was a new shipper of freshwater crawfish tailmeat, and the Hubei Entries were made during the pendency of Hubei's "new shipper review."[1] *See Freshwater Crawfish Tail Meat from the People's Republic of China*, 67 Fed. Reg. 67,822 (Dep't of Commerce Nov. 7, 2002) (initiation of antidumping duty new shipper reviews). After Hubei's new shipper review was rescinded, meaning Hubei did not qualify for an individual antidumping duty rate, Customs liquidated the Hubei Entries at the 223.01% country-wide rate in effect pursuant to the final results of the relevant administrative review of the Order. *See Freshwater Crawfish Tail Meat from the People's Republic of China*, 68 Fed. Reg. 52,746 (Dep't of Commerce Sept. 5, 2003) (rescission of antidumping duty new shipper reviews). Following Sunline's failure to pay the duties owed after liquidation, Customs demanded payment from Hartford.

Hartford did not satisfy the demand and instead filed a complaint at the CIT on February 7, 2007, seeking to void its obligations under the bonds securing the Hubei Entries. Hartford alleged the bonds were voidable because Customs had been investigating Sunline for possible import law violations during the period in which the bonds were secured and the Hubei Entries were entered, and Customs did not inform Hartford of the investigation. In particular, in Hartford's Second Amended Complaint filed on September 12, 2012,[2] Hartford alleges, as its

---

[1]  "A new shipper review covers imports by an importer or producer that was not subject to the initial antidumping duty investigation and believes it is entitled to an individual antidumping duty margin." *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1381 (Fed. Cir. 2014) (citing 19 U.S.C. § 1675(a)(2)(B)).

[2]  In April 2009, Customs moved to dismiss Hartford's First Amended Complaint in this case for lack of

single cause of action, that Customs, as obligee on the bonds, abused its discretion by either failing to require a cash deposit in lieu of a bond for the Hubei Entries or by failing to reject the entries altogether. Hartford further alleged, given the confidential nature of Customs' investigation, Customs should have known that Hartford was not aware of the existence of an investigation, and therefore Customs unreasonably increased Hartford's risk when it approved the Hubei bonds.

Customs moved to dismiss the Second Amended Complaint for failure to state a claim pursuant to USCIT Rule 12(b)(5), which the CIT granted on June 27, 2013. Hartford appeals. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (2012).

### DISCUSSION

### I. Standard of Review

This court reviews de novo the CIT's dismissal of a case for failure to state a claim for which relief can be granted. *Sioux Honey Ass'n v. Hartford Fire Ins. Co.,* 672

---

subject matter jurisdiction. The CIT granted that motion. *Hartford Fire Ins. Co. v. United States*, 679 F. Supp. 2d 1362 (Ct. Int'l Trade 2009). Hartford appealed and this court reversed, finding subject matter jurisdiction existed pursuant to 28 U.S.C. § 1581(i) (2006). *Hartford Fire Ins. Co. v. United States,* 648 F.3d 1371 (Fed. Cir. 2011). The issues involved in those decisions are not on appeal. After returning to the CIT, Customs moved to dismiss the First Amended Complaint in its entirety. The CIT dismissed two causes of action with prejudice, but permitted Hartford to amend its First Amended Complaint to plead sufficient facts to make an alternate claim. *See Hartford Fire Ins. Co. v. United States*, 857 F. Supp. 2d 1356 (Ct. Int'l Trade 2012). Hartford's Second Amended Complaint was then filed.

F.3d 1041, 1049 (Fed. Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In deciding a motion to dismiss, the court must accept well-pleaded factual allegations as true and must draw all reasonable inferences in favor of the claimant." *Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1365 (Fed. Cir. 2013) (citing *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)).

## II. Legal Framework

The antidumping statute authorizes the United States Department of Commerce ("Commerce") to impose duties on imported goods that are sold in the United States at less-than-fair value. *See* 19 U.S.C. § 1673 (2000). Once an antidumping duty order covering certain goods is in place, upon request, Commerce will conduct administrative reviews "for new exporters and producers" who did not export the subject merchandise during the period of investigation.[3] *Id.* § 1675(a)(2)(B); *see also Marvin Furniture (Shanghai) Co. v. United States*, 744 F.3d 1319, 1323 (Fed. Cir. 2014) ("'[N]ew shipper reviews' give exporters or producers whose sales have not been

---

[3] "If a new shipper does not participate in a new shipper review, its merchandise will likely be subject to a predetermined deposit rate that applies generally to companies whose products were never individually investigated," i.e., the "country-wide rate." *Sioux Honey*, 672 F.3d at 1047–48.

previously examined by Commerce an opportunity to obtain their own individual antidumping duty rates.").

"When importing merchandise into the United States, 'the importer of record shall deposit with [Customs] at the time of entry . . . the amount of duties and fees estimated to be payable on such merchandise,' including applicable antidumping or countervailing duties." *Chemsol, LLC v. United States*, 755 F.3d 1345, 1349 (Fed. Cir. 2014) (quoting 19 U.S.C. § 1505(a)). The "deposits collected upon entry are considered estimates of the duties that the importer will ultimately have to pay as opposed to payments of the actual duties." *Sioux Honey*, 672 F.3d at 1047. The deposited security is frequently a customs bond, but when a bond or other type of security is not specifically required by law, "the Secretary of the Treasury may . . . require, or authorize customs officers to require, such bonds or other security as he, or they, may deem necessary for the protection of the revenue or to assure compliance with any provision of law, regulation, or instruction." 19 U.S.C. § 1623(a). For new shipper reviews, pursuant to 19 U.S.C. § 1675(a)(2)(B)(iii), Commerce "shall . . . direct [Customs] to allow, *at the option of the importer*, the posting . . . of a bond or security in lieu of a cash deposit for each entry of the subject merchandise" (i.e., the so-called "bonding privilege") (emphasis added).[4]

------

[4]    Congress suspended the bonding privilege for new shippers and required cash deposits between April 1, 2006, and June 30, 2009. However, the statutory framework outlined above was in effect at the time Sunline made the Hubei Entries. *See Sioux Honey*, 672 F.3d at 1048 ("For over eleven years (January 1, 1995 through April 1, 2006), new shippers were allowed to satisfy [the] deposit requirement by having a surety post a customs

### III. Hartford Has Failed to State a Claim Plausible on its Face that Customs Abused Its Discretion by Accepting the Bonds on the Hubei Entries

In response to Hartford's allegation that Customs abused its discretion when it approved the Hubei bonds because it was aware that Sunline was being investigated, the CIT held, "[e]ven construed in the light most favorable to [Hartford], there is nothing in the pleadings here to plausibly suggest that Customs' investigation had proceeded to the stage where Customs had reason to believe the Hubei entries were problematic or that new shipper bonds would be insufficient security." *Hartford*, 918 F. Supp. 2d at 1381. In doing so, the CIT observed "Hartford merely pleads that the investigation into Sunline had begun two weeks before the last Hubei bond was issued," and that "the investigation did not involve the Hubei entries, but rather involved the entries of an entirely different supplier." *Id.* Therefore, the CIT concluded, "[w]ithout any connection to the Hubei entries, a bare allegation that Customs was investigating Sunline is insufficient to plausibly suggest abuse of discretion." *Id.* (citations omitted).

The CIT found unavailing Hartford's argument that Customs abused its discretion by failing to reject the Hubei Entries altogether in light of (1) the investigation and (2) the fact that Customs ultimately rejected another set of entries made by Sunline that preceded the Hubei Entries (the "World Commerce Entries"). *Id.* The World Commerce Entries were rejected because Customs concluded Sunline had falsified documents to reflect a different manufacturer. *Id.* (citations omitted). The CIT explained this argument failed "because the World Commerce entries suffered from a different flaw that was

bond in lieu of cash." (citing 19 U.S.C. § 1675(a)(2)(B)(iii))).

independent of, and not logically connected to, Sunline's default on the Hubei entries." *Id.* The CIT found Hartford's "pleadings do not even suggest how Customs' investigation of false documentation in one set of entries can plausibly lead to the conclusion that Sunline would default on the Hubei entries." *Id.* As such, the CIT found no basis to plausibly infer an abuse of discretion on the part of Customs. *Id.*

Hartford renews these arguments here, insisting it has stated a plausible claim that Customs abused its discretion in accepting the Hubei bonds and allowing Hartford to serve as surety given Customs' knowledge of the confidential Sunline investigation. In particular, Hartford argues its Second Amended Complaint sets out the following facts: (1) Hartford knew nothing of Customs' knowledge of and investigation into Sunline's fraudulent activities before Hartford issued and Customs accepted the bonds; (2) Customs never informed Hartford of the investigation and should have known that withholding this information increased Hartford's risk on the bonds; (3) given the confidential nature of the investigation, Customs knew or should have known Hartford was unaware of the investigation when it assumed the risk of being the surety on the Hubei Entries; and (4) "Customs took no action within its discretion to prevent or limit Hartford's injury, which resulted from Hartford being surety on bonds issued to a principal obligor that was being investigated by the obligee for fraud, without the benefit of knowing of that investigation." Appellant's Br. 15–17.

Hartford further argues there were actions Customs could have taken without violating the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006), but it chose not to take such steps. Specifically, Hartford states, "[w]hile the FOIA may have prevented the government from directly disclosing the existence of its confidential investigation of Sunline to Hartford, the FOIA does not

insulate the government from taking other steps short of disclosure that would be consistent with its duties as an obligee to a surety bond." Appellant's Reply 13. Such steps, according to Hartford, would include rejecting the Hubei Entries altogether, rejecting the bonds, or requiring additional security.

As an initial matter, to the extent Hartford claims Customs abused its discretion by failing to inform Hartford of its investigation, in a prior decision the CIT held this claim was preempted by FOIA.[5] That decision is not on appeal here. Thus, the issue before this court is confined to whether Hartford has pled sufficient facts to state a claim that Customs abused its discretion by failing to take other affirmative actions, such as rejecting the Hubei Entries altogether, rejecting the bonds, or requiring additional security. This court finds it did not.

When reviewing an agency decision for abuse of discretion, the court examines whether the decision "1) is

---

[5] Specifically, the CIT explained that "the FOIA disclosure scheme is comprehensive: a limited category of records must be proactively disclosed; a second, limited category of records must be available for public inspection; and *all other records* are to be available upon request unless exempted from disclosure." *Hartford Fire Ins. Co. v. United States*, 857 F. Supp. 2d 1356, 1365 (Ct. Int'l Trade 2012). Here, the CIT found the information about Customs' investigation fell under the exemption of § 552(b)(7)(A) for "records or information compiled for law enforcement purposes . . . [that] could reasonably be expected to interfere with enforcement proceedings." *Id.* Thus, the CIT concluded, "for its claim to stand, Hartford must have a right to disclosure of the information. But, insofar as Hartford seeks disclosure of Customs' law enforcement investigation of Sunline, its common law right is preempted by FOIA." *Id.* at 1365–66.

clearly unreasonable, arbitrary, or fanciful; 2) is based on an erroneous conclusion of law; 3) rests on clearly erroneous fact findings; or 4) follows from a record that contains no evidence on which the [agency] could rationally base its decision." *Sterling Fed. Sys., Inc. v. Goldin*, 16 F.3d 1177, 1182 (Fed. Cir. 1994) (quoting *Gerritsen v. Shirai*, 979 F.2d 1524, 1529 (Fed. Cir. 1992)); *see also Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1147–48 (Fed. Cir. 2011) (noting a clear error of judgment occurs when an action is "arbitrary, fanciful, or clearly unreasonable").

Here, as noted by the CIT and the Government, Hartford has alleged facts about a fraud investigation involving other entries made by Sunline and a different supplier, Shanghai Taoen International Trading Co., which is not connected to this case. J.A. 30; Appellee's Br. 13. Hartford has not, however, pled any facts as to how the existence of Customs' fraud investigation could plausibly serve as the basis for an abuse of discretion claim with respect to the Hubei Entries. Indeed, even if all of Hartford's alleged facts are accepted as true, without a connection to the Hubei Entries they do not establish a plausible claim that Customs abused its discretion by failing to reject the bonds or the Hubei Entries. Thus, regardless of the investigation into Sunline, there are no facts alleged from which the court can plausibly infer Customs had any reason to believe that the Hubei Entries were problematic, or that any information submitted with respect to the Hubei Entries had been falsified.

Furthermore, Hartford has not alleged any facts that establish a connection between the investigation and Sunline's failure to pay its antidumping duties after liquidation. That Sunline was under investigation for possible import law violations involving other entries at the time the Hubei Entries were made does not render plausible a claim that this investigation was related to Sunline's default, and therefore to Hartford's liability.

Nor does this fact reveal any reason why Customs might have chosen to reject the Hubei Entries or the bonds. Accordingly, Hartford "ha[s] not provided enough factual detail in the Complaint to render [its] conclusions *plausible*." *Sioux Honey*, 672 F.3d at 1063 (citing *Iqbal,* 556 U.S. at 677; *Twombly,* 550 U.S. at 570).

## IV. In Light of the Bonding Privilege, Hartford Has Not Stated a Plausible Claim that Customs Abused Its Discretion by Failing to Require Cash Deposits or Additional Security

Hartford also objects to the CIT's finding that, given the new shipper bonding privilege in effect at the time of the Hubei Entries, Customs could not have demanded a cash deposit in lieu of the bonds issued by Hartford. Therefore, "because Customs had no discretion, there is no abuse of discretion in Customs['] failure to have insisted on cash deposits rather than bonds." *Hartford*, 918 F. Supp. 2d at 1379. Hartford contends the new shipper bonding privilege of 19 U.S.C. § 1675(a)(2)(B)(iii) "simply allows the importer the option to post a bond instead of cash deposits," but does not prevent Customs from exercising its discretion to require bonds or other security under 19 U.S.C. §§ 1484(a)(2)(C) and 1623(a) and various customs regulations.[6] Appellant's Br. 12, 22–32.

---

[6] Specifically, Hartford points to the regulations governing Customs bonds, including 19 C.F.R. §§ 113.2 (2003) (allowing Customs to prescribe the conditions and form of Customs bonds), 113.11 (directing the port director to "determine whether the bond is in proper form and provides adequate security for the transaction(s)"), and 113.40 (authorizing the port director "to accept United States money, United States bonds . . . , United States certificates of indebtedness, Treasury notes, or Treasury

Section 1484(a)(2)(C) provides "[t]he Secretary shall also provide, to the maximum extent practicable, for the protection of the revenue, the enforcement of laws governing the importation and exportation of merchandise, the facilitation of the commerce of the United States, and the equal treatment of all importers of record of imported merchandise." Section 1623(a) provides, if "[a] bond or other security is not specifically required by law, the Secretary of the Treasury may . . . require, or authorize customs officers to require, such bonds or other security as he, or they, may deem necessary for the protection of the revenue or to assure compliance with any provision of law, regulation, or instruction."

To Hartford, the statute's bonding privilege, which reads Commerce "*shall* . . . direct [Customs] to allow, *at the option of the importer*, the posting . . . of a bond or security in lieu of a cash deposit for each entry of the subject merchandise," 19 U.S.C. § 1675(a)(2)(B)(iii) (emphases added), cannot "trump[] Congress's direction to Customs to protect the revenue and the border from malfeasant and/or criminal importing and importers." Appellant's Br. 22. Thus, Hartford contends, "the statutory and regulatory regime clearly provides Customs with discretion to regulate the entry process and to use bonds and other security to safeguard revenue, enforce the laws governing importing and facilitate trade." *Id.* at 24.

Specifically, Hartford again insists Customs should have exercised its discretion in one of three ways. First, it should have rejected the Hubei Entries altogether in the same way the World Commerce Entries were rejected. If it had done so, Hartford argues, Customs "would not have benefited to Hartford's detriment from its superior knowledge in the obligee-obligor-surety relationship."

---

bills" in lieu of bonds), as well as 19 C.F.R. § 141.64 (providing for review and correction of entry documents).

Appellant's Br. 26. Second, Customs could have rejected the bonds because, according to Hartford, the bonding privilege does not preempt Customs' discretion under 19 U.S.C. §§ 1484(a)(2)(C) and 1623(a) to reject bonds when it knows "the revenue of the U.S. is in jeopardy." *Id.* at 26–27. Finally, Hartford argues, Customs could have required additional security pursuant to its discretion under 19 U.S.C. § 1623 and 19 C.F.R. § 113.2 (2003) (allowing Customs to prescribe the conditions and form of Customs bonds).

These arguments are unpersuasive. As the CIT observed, Hartford's argument that Customs' actions were unlawful because they were contrary to its statutory mandate to "protect the revenue of the U.S." is unavailing because "Customs is directed to protect, among other things, the revenues of the United States, but not the revenues of the sureties." *Hartford*, 918 F. Supp. 2d at 1380 (citing 19 U.S.C. § 1484(a)(2)(C); *Cam–Ful Indus., Inc. v. Fid. & Deposit Co.,* 922 F.2d 156, 162 (2d Cir. 1991) ("The policy behind surety bonds is not to protect a surety from its own laziness or poorly considered decision.")). Indeed, as the Government points out, "Hartford's claim improperly seeks to convert Customs' obligation to protect the revenue of the United States into a duty owed to Hartford and impermissibly shift the responsibility for assessing a surety's risk from the surety to the Government." Appellee's Br. 9. Customs was not required to assess Hartford's exposure to risk.

As this court made clear in *United States v. Great American Insurance Co. of New York*, 738 F.3d 1320, 1332 (Fed. Cir. 2013), "[u]nder th[e] standard [articulated in the Restatement (Third) of Suretyship & Guaranty § 37(1) (1996)], in order for [a surety] to be discharged from its bond obligations, the government must have fundamentally altered the risks imposed on [the surety], . . . or impaired [the surety's] recourse against [the principal]." Hartford has failed to plead facts suggesting that the

investigation had *any* impact on Sunline's default, or increased the risk of default in *any* fashion. As noted, it is unclear whether the investigation ever related to or affected the Hubei Entries. Indeed, the assessment of the 223.01% country-wide antidumping duty rate resulted from the rescission of Hubei's new shipper review, not from the investigation. In addition, even if Customs had discretion to reject the bonds as an inadequate form of security or to request additional security, Hartford has also failed to allege a plausible basis why Customs should have taken either of these actions, or how failing to take such actions constitutes an abuse of discretion.

While Customs might have required a cash deposit or other security in lieu of *insufficient* entry bonds, there was no abuse of discretion when Customs acted in accordance with the bonding privilege of 19 U.S.C. § 1675(a)(2)(B)(iii), in which Congress expressly afforded the discretion to decide whether to submit bonds in lieu of cash deposits to importers, not to Customs. *See* 19 U.S.C. § 1675(a)(2)(B)(iii) (Commerce "shall . . . direct [Customs] to allow, *at the option of the importer*, the posting . . . of a bond or security in lieu of a cash deposit for each entry of the subject merchandise.") (emphasis added). By this express statutory directive, Customs was required to permit Sunline to secure the Hubei Entries with bonds in lieu of cash deposits. None of the statutes or regulations relied upon by Hartford contravenes or supplants this directive.

Nor does the court perceive, as suggested by Hartford, any "apparent tension between Commerce's directing Customs to allow an importer to post a new shipper bond at the importer's discretion to cover estimated antidumping duties, and Customs' statutory mandate to protect the revenues of the U.S. and enforce the laws governing importing and importer activity to the 'maximum extent practicable.'" Appellant's Br. 26 (quoting 19 U.S.C. § 1484(a)(2)(C)). That the trade statute provides Customs

with broad authority to require some form of security under § 1623(a) does not mean Customs should ignore the mandate in another part of the statute to allow importers to choose the type of security they post. As the CIT noted, Customs acted "in full compliance with the governing statutes and regulations when it accepted the bonds." *Hartford*, 918 F. Supp. 2d at 1380. Hartford's allegations to the contrary are not a plausible basis for its abuse of discretion claim.

## CONCLUSION

Accordingly, the decision of the United States Court of International Trade is

## AFFIRMED