# UNITED STATES *v.* IDAHO EX REL. DIRECTOR, IDAHO DEPARTMENT OF WATER RESOURCES

No. 92–190.   Argued March 29, 1993—Decided May 3, 1993

*Jeffrey P. Minear* argued the cause for the United States. With him on the briefs were *Solicitor General Starr, Acting Solicitor General Bryson, Acting Assistant Attorney General O'Meara, Edwin S. Kneedler, Peter C. Monson, Robert L. Klarquist,* and *William B. Lazarus.*

*Clive J. Strong,* Deputy Attorney General of Idaho, argued the cause for respondent. With him on the brief were *Larry EchoHawk,* Attorney General, and *David J. Barber, Peter R. Anderson,* and *Steven W. Strack,* Deputy Attorneys General.*

---

*Robert T. Anderson, Melody L. McCoy, Walter R. Echo-Hawk, Patrice Kunesh, Carl Ullman, Henry J. Sockbeson,* and *Dale T. White* filed a brief for the Nez Perce Tribe et al. as *amici curiae* urging reversal.

*Theodore R. Kulongoski,* Attorney General of Oregon, *Virginia L. Linder,* Solicitor General, and *Jerome S. Lidz, Stephen E. A. Sanders,* and *Rives Kistler,* Assistant Attorneys General, filed a brief for the State of Alaska et al. as *amici curiae* urging affirmance.

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

The McCarran Amendment allows a State to join the United States as a defendant in a comprehensive water right adjudication. 66 Stat. 560, 43 U. S. C. § 666(a). This case arises from Idaho's joinder of the United States in a suit for the adjudication of water rights in the Snake River. Under Idaho Code § 42–1414 (1990), all water right claimants, including the United States, must pay "filing fees" when they submit their notices of claims. Idaho collects these fees to "financ[e] the costs of adjudicating water rights," § 42–1414; the United States estimates that in its case the fees could exceed $10 million. We hold that the McCarran Amendment does not waive the United States' sovereign immunity from fees of this kind.

Discovered by the Lewis and Clark expedition, the Snake River—the "Mississippi of Idaho"—is 1,038 miles long and the principal tributary to the Columbia River. It rises in the mountains of the Continental Divide in northwest Wyoming and enters eastern Idaho through the Palisades Reservoir. Near Heise, Idaho, the river leaves the mountains and meanders westerly across southern Idaho's Snake River plain for the entire breadth of the State—some 400 miles. On the western edge of Idaho, near Weiser, the Snake enters Oregon for a while and then turns northward, forming the Oregon-Idaho boundary for 216 miles. In this stretch, the river traverses Hells Canyon, the Nation's deepest river gorge. From the northeastern corner of Oregon, the river marks the Washington-Idaho boundary until Lewiston, Idaho, where it bends westward into Washington and finally flows into the Columbia just south of Pasco, Washington. From elevations of 10,000 feet, the Snake descends to 3,000 feet and, together with its many tributaries, provides the only water for most of Idaho. See generally T. Palmer, The Snake River (1991).

4

This litigation followed the enactment by the Idaho Legislature in 1985 and 1986 of legislation providing for the Snake River Basin Adjudication. That legislation stated that "the director of the department of water resources shall petition the [state] district court to commence an adjudication within the terms of the McCarran [A]mendment." Idaho Code § 42–1406A(1) (1990). The 1985 and 1986 legislation also altered Idaho's methods for "financing the costs of adjudicating water rights"; it provided that the Director of the Idaho Department of Water Resources shall not accept a "notice of claim" from any water claimant unless such notice "is submitted with a filing fee based upon the fee schedule." § 42–1414. "Failure to pay the variable water use fee in accordance with the timetable provided shall be cause for the department to reject and return the notice of claim to the claimant." *Ibid.* Idaho uses these funds "to pay the costs of the department attributable to general water rights adjudications" and "to pay for judicial expenses directly relating to the Snake river adjudication." §§ 42–1777(1) and (2).

The Director of the Idaho Department of Water Resources filed a petition in the District Court of the Fifth Judicial District naming the United States and all other water users as defendants. The District Court entered an order commencing the adjudication, which was affirmed by the Supreme Court of Idaho. *In re Snake River Basin Water System*, 115 Idaho 1, 764 P. 2d 78 (1988), cert. denied *sub nom. Boise-Kuna Irrigation Dist.* v. *United States*, 490 U. S. 1005 (1989). When the United States attempted to submit its notices of claims unaccompanied by filing fees, the director refused to accept them. The United States then filed a petition for a writ of mandamus with the state court to compel the director to accept its notices without fees, asserting that the McCarran Amendment does not waive federal sovereign immunity from payment of filing fees. The District Court granted Idaho summary judgment on the immunity issue: "The ordinary, contemporary and common meaning of the

language of *McCarran* is that Congress waived *all rights* to assert any facet of sovereign immunity in a general adjudication of all water rights . . . which is being conducted in accordance with state law." App. to Pet. for Cert. 86a (emphasis in original).

The Supreme Court of Idaho affirmed by a divided vote. 122 Idaho 116, 832 P. 2d 289 (1992). It concluded that the McCarran Amendment "express[es] a 'clear intent' of congress to subject the United States to all of the state court processes of an 'adjudication' of its water rights with the sole exception of costs." *Id.*, at 121, 832 P. 2d, at 294. The court also "decline[d] to read the term judgment for costs as including the term filing fees." *Id.*, at 122, 832 P. 2d, at 295. Whereas "costs" are charges that a prevailing party may recover from its opponent as part of the judgment, "fees are compensation paid to an officer, such as the court, for services rendered to individuals in the course of litigation." *Ibid.* Two justices wrote separate dissents, asserting that the McCarran Amendment does not waive sovereign immunity from filing fees. We granted certiorari, 506 U. S. 939 (1992), and now reverse.

The McCarran Amendment provides in relevant part:

"Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain

review thereof, in the same manner and to the same extent as a private individual under like circumstances: *Provided,* That no judgment for costs shall be entered against the United States in any such suit." 43 U. S. C. § 666(a).

According to Idaho, the amendment requires the United States to comply with *all* state laws applicable to general water right adjudications. Idaho argues that the first sentence of the amendment, the joinder provision, allows joinder of the United States as a defendant in suits for the adjudication of water rights. It then construes the amendment's second sentence, the pleading provision, to waive the United States' immunity from all state laws pursuant to which those adjudications are conducted. Idaho relies heavily on the language of the second sentence stating that the United States shall be "deemed to have waived any right to plead that the State laws are inapplicable." Because the "filing fees" at issue here are assessed in connection with a comprehensive adjudication of water rights, Idaho contends that they fall within the McCarran Amendment's waiver of sovereign immunity.

The United States, on the other hand, contends that the critical language of the second sentence renders it amenable only to state substantive law of water rights, and not to any of the state adjective law governing procedure, fees, and the like. The Government supports its position by arguing that the phrase "the State laws" in the second sentence must be referring to the same "State law" mentioned in the first sentence, and that since the phrase in the first sentence is clearly directed to substantive state water law, the phrase in the second sentence must be so directed as well.

There is no doubt that waivers of federal sovereign immunity must be "unequivocally expressed" in the statutory text. See *Irwin* v. *Department of Veterans Affairs,* 498 U. S. 89, 95 (1990); *Department of Energy* v. *Ohio,* 503 U. S. 607, 615 (1992); *United States* v. *Nordic Village, Inc.,* 503 U. S. 30,

33–34 (1992). "Any such waiver must be strictly construed in favor of the United States," *Ardestani* v. *INS,* 502 U. S. 129, 137 (1991), and not enlarged beyond what the language of the statute requires, *Ruckelshaus* v. *Sierra Club,* 463 U. S. 680, 685–686 (1983). But just as " 'we should not take it upon ourselves to extend the waiver beyond that which Congress intended[,] . . . [n]either, however, should we assume the authority to narrow the waiver that Congress intended.' " *Smith* v. *United States,* 507 U. S. 197, 206 (1993) (quoting *United States* v. *Kubrick,* 444 U. S. 111, 117–118 (1979)).

We are unable to accept either party's contention. The argument of the United States is weak, simply as a matter of grammar, because the critical term in the second sentence is "the State law*s*," while the corresponding language in the first sentence is "State law." And such a construction would render the amendment's consent to suit largely nugatory, allowing the Government to argue for some special federal rule defeating established state-law rules governing pleading, discovery, and the admissibility of evidence at trial. We do not believe that Congress intended to create such a legal no-man's land in enacting the McCarran Amendment. We rejected a similarly technical argument of the Government in construing the McCarran Amendment in *United States* v. *District Court, County of Eagle,* 401 U. S. 520, 525 (1971), saying "[w]e think that argument is extremely technical; and we decline to confine [the McCarran Amendment] so narrowly."

We also reject Idaho's contention. In several of our cases exemplifying the rule of strict construction of a waiver of sovereign immunity, we rejected efforts to assess monetary liability against the United States for what are normal incidents of litigation between private parties. See, *e. g., United States* v. *Chemical Foundation, Inc.,* 272 U. S. 1, 20–21 (1926) (assessment of costs); *Library of Congress* v. *Shaw,* 478 U. S. 310, 323 (1986) (recovery of interest on judg-

ment); *Ohio, supra,* at 619–620 (liability for punitive fines). And the McCarran Amendment's "cost proviso," of course, expressly forbids the assessment of costs against the United States: "[N]o judgment for costs shall be entered against the United States."

The Supreme Court of Idaho pointed out in its opinion that "fees" and "costs" mean two different things in the context of lawsuits, 122 Idaho, at 122, 832 P. 2d, at 295, and we agree with this observation. "Fees" are generally those amounts paid to a public official, such as the clerk of the court, by a party for particular charges typically delineated by statute; in contrast, "costs" are those items of expense incurred in litigation that a prevailing party is allowed by rule to tax against the losing party. See 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2666, pp. 173–174 (1983). Before Idaho altered its system for recovering its expenses in conducting comprehensive water right adjudications in 1985 and 1986, Idaho courts, at the time of entry of final judgment, used to proportionately tax the "costs" of the adjudication against all parties to the suit, and not simply against the losing parties. Idaho Code § 42–1401 (1948). When Idaho revised this system, many of the items formerly taxed as "costs" to the parties at the conclusion of the adjudication were denominated as "fees," and required to be paid into court at the outset. This suggests that although the general distinction between fees and costs may be accurate, in the context of this proceeding the line is blurred, indeed.

While we therefore accept the proposition that the critical language of the second sentence of the McCarran Amendment submits the United States generally to state adjective law, as well as to state substantive law of water rights, we do not believe it subjects the United States to the payment of the sort of fees that Idaho sought to exact here. The cases mentioned above dealing with waivers of sovereign immunity as to monetary exactions from the United States in litigation show that we have been particularly alert to re-

quire a specific waiver of sovereign immunity before the United States may be held liable for them. We hold that the language of the second sentence making "the State laws" applicable to the United States in comprehensive water right adjudications is not sufficiently specific to meet this requirement.

The judgment of the Supreme Court of Idaho is therefore reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, concurring in the judgment.

As the Court points out, *ante*, at 8, before 1985 "fees" comparable to those at issue in this litigation were taxed as "costs" in Idaho. Because I am persuaded that these exactions are precisely what Congress had in mind when it excepted judgments for "costs" from its broad waiver of sovereign immunity from participation in water rights adjudications, I concur in the Court's judgment.