UNITED STATES of America; Michael P.W. Stone, The Secretary of the Army, On Behalf of the Department of Defense and Other Federal Executive Agencies, Plaintiffs–Appellees,

v.

ALASKA PUBLIC UTILITIES COMMISSION; State of Alaska, Defendants–Appellants.

No. 92–36614.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 6, 1994.

Decided May 2, 1994.

---

Elizabeth J. Hickerson, Asst. Atty. Gen., Anchorage, Alaska, for defendant-appellant.

E. Roy Hawkens, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellee.

Before: CANBY, and T.G. NELSON, Circuit Judges, and SHUBB,* District Judge.

Opinion by Judge T.G. NELSON

T.G. NELSON, Circuit Judge:

## I.

### OVERVIEW

The Alaska Public Utilities Commission (APUC) and the State of Alaska appeal from the district court's summary judgment in favor of the United States Department of Defense (DOD) in the DOD's action challenging the APUC's assessment of costs for two administrative utility rate proceedings in which the DOD had intervened. The district court held that the application of an Alaska statute requiring the APUC to allocate the costs of the hearing among the parties to the federal government is an unconstitutional exercise of state powers in violation of the Supremacy Clause of the Constitution (art. VI, cl. 2). *United States v. Alaska Pub. Utilities Comm'n,* 800 F.Supp. 857, 864 (D.Alaska 1992). We affirm. However, we share the concern voiced by the district court concerning the United States' position in this case, and agree with the district court's observation that "the parties should approach this problem at an appropriate executive level and resolve the matter in a fashion that will not trigger the hard rules which dictate the decision in this case." *Id.* at 865.

## II.

### FACTS AND PROCEDURAL HISTORY

The facts are not disputed. In 1985 and 1987,.the APUC held hearings regarding rate increases proposed by ALASCOM, a provider of telecommunication services in Alaska. Under the Federal Property Management Improvement Act of 1988, the United States General Services .Administration (GSA) has the discretion to determine whether it is necessary for the federal Government to intervene in a rate setting hearing. 40 U.S.C. § 481(a)(4). The DOD maintains numerous military installations and civilian agency activities in Alaska which obtain services from ALASCOM, and pursuant to 40 U.S.C. § 486(d), GSA delegated its authority to intervene in the APUC hearings to the DOD.

DOD sought and received APUC's permission to intervene. *See* Alaska Admin.Code Tit. 3, § 48.110 (October 1988). The APUC is required to apportion costs associated with rate setting hearings among the. participants. AS 42.05.651.[1] The DOD's petition to intervene stated:

The Military acknowledges the authority of the [APUC] to allocate costs of an investigation or hearing among the parties (Alaska Statute 42.05.651). Petitioner is willing to accept this potential liability and pay its fair share of the expenses in this case.

The APUC assessed 2.5 percent of the costs for the hearings, a total of $19,933.54, to the DOD. APUC rejected DOD's arguments in opposition to the amount of assessment.

DOD then filed a complaint in federal court alleging that AS 42.05.651 is unconsti-

---

* Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation.

1. AS 42.05.651 (1989) provides in relevant part:
(a) After completion of a hearing or investigation held under this chapter, the commission shall allocate the costs of the hearing or investigation among the parties, including the commission, as is just under the circumstances. In allocating costs, the commission may consider the results, ability to pay, evidence of good faith, other relevant factors and mitigating circumstances. The costs allocated may include the costs of any time devoted to the investigation or hearing by hired consultants, whether or not the consultants appear as witnesses or participants. The costs allocated may also include any out-of-pocket expenses incurred by the commission in the particular proceeding. The commission shall provide an opportunity for any person objecting to an allocation to be heard before the allocation becomes final.

tutional as applied to DOD because it violates the Supremacy Clause (art. VI, cl. 2) and the Anti–Deficiency Act (31 U.S.C. § 1341(a)). On cross-motions for summary judgment, the district court held that Alaska's imposition of these costs violated the Supremacy Clause and that the United States was not estopped from refusing to pay the costs. The State of Alaska and APUC (collectively referred to as APUC) timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we review the district court's grant of summary judgment *de novo. Jones v. Union Pac. R.R.,* 968 F.2d 937, 940 (9th Cir.1992).

## III.

## DISCUSSION

The district court held that the imposition of costs against the federal Government pursuant to AS 42.05.651 is invalid under the Supremacy Clause because the Government must agree to pay these costs before it is allowed to intervene in the hearings and that this interferes with the performance of the federal function set forth in 40 U.S.C. § 481. Section 481 provides:

> The Administrator [of the GSA] shall, in respect of executive agencies, and to the extent that he determines that so doing is advantageous to the Government in terms of economy, efficiency, or service, ... with respect to ... public utility services for the use of executive agencies, represent such agencies in negotiations with ... public utilities before Federal and State regulatory bodies.

40 U.S.C. § 481(a)(4).

APUC's primary argument on appeal is that by moving to intervene in the utility hearings, the federal Government explicitly waived its sovereign immunity from payment of the assessment for the costs of the hearings. APUC contends that it is reasonable to assume that the DOD would make sure the costs of intervention, including any reasonable costs equitably assessed by the APUC, were within its budget prior to petitioning to intervene, and that doing otherwise would be an unreasonable exercise of discretion under Section 481. APUC argues that Section 481 authorizes disbursement of funds to pay for participation in state utility proceedings. It further argues that Section 481 implies that if the United States is going to participate before a state agency, that it will do so according to that state's laws and procedures.

 The reasonableness of the APUC's assumptions aside, assumptions and implications are not sufficient to constitute a waiver of federal sovereign immunity. "[W]aivers of federal sovereign immunity must be 'unequivocally expressed' in the statutory text." *United States v. Idaho,* ―― U.S. ――, ――, 113 S.Ct. 1893, 1896, 123 L.Ed.2d 563 (1993). Section 481 is not sufficiently specific to constitute a waiver of statutory immunity from payment of the APUC's assessment in this case. *Cf. id.* at ――, 113 S.Ct. at 1897 (language of federal statute making "the State laws" applicable to the United States in comprehensive water right adjudications is not sufficiently specific to constitute waiver of sovereign immunity from paying state filing fees).

██ APUC argues that *Idaho* is distinguishable because in that case the United States was joined as a necessary party, and here the United States intervened voluntarily after it determined this was the most efficient way to secure utilities. APUC also points out that in *Idaho* the federal law allowing joinder of the United States in water adjudication suits expressly prohibited the assessment of costs against the United States, and that no such express prohibition is contained in Section 481. *See Idaho,* ―― U.S. at ――, ――, 113 S.Ct. at 1896, 1897. However, these distinctions make little difference as far as the issue of waiver of federal sovereign immunity is concerned. Such waivers are strictly construed, *id.* at ――, 113 S.Ct. at 1897, and Section 481 simply does not contain the necessary unequivocal expression of waiver. Silence on the subject of costs is not an explicit waiver.

 We must disagree with APUC's contention that there is no implication or violation of the Supremacy Clause in this case. The Supremacy Clause establishes federal law as the supreme law of the land. U.S. Const. art. VI, cl. 2. "A corollary to this

principle is that the activities of the Federal Government are free from regulation by any state." *Mayo v. United States,* 319 U.S. 441, 445, 63 S.Ct. 1137, 1139, 87 L.Ed. 1504 (1943) (fee sought by state against federal government "before executing a function of government" prohibited by Supremacy Clause); *see also M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819) (absent congressional consent, the property and functions of the United States are immune from regulation or taxation by the several states). It is this corollary, discussed in *Mayo,* that APUC overlooks in its arguments.

In *Mayo,* the Supreme Court held that the State of Florida could not, without congressional permission, require the United States to pay a reasonable inspection fee for the inspection of fertilizer it distributed to Florida farmers as part of a federal soil conservation program. 319 U.S. at 446–48, 63 S.Ct. at 1140–41. The Court acknowledged that the state inspection service was to protect consumers from fraud, "but in carrying out such protection, the federal function must be left free. This freedom is inherent in sovereignty." *Id.* at 447, 63 S.Ct. at 1140 (footnote omitted). Similarly, in this case the State of Alaska was providing a forum for the federal government to be heard and in which to protect its interests. However, where "the governmental action is carried on by the United States itself and Congress does not affirmatively declare its instrumentalities or property subject to regulation or taxation, the inherent freedom continues." *Id.* at 448, 63 S.Ct. at 1141. Section 481 contains no such affirmative declaration. That section's authorization for GSA to decide to participate does not also authorize the state to impose costs on the Government as a result of the intervention.

█ APUC argues only indirectly that the DOD's intervention in the hearings did not constitute a federal function. It alludes to an argument that because the United States was acting in a proprietary capacity as a consumer of telecommunication services, it was not engaged in a governmental function. The DOD's petition to intervene and its intervention cannot be characterized as anything but governmental in nature. DOD was directed to intervene by GSA, and it was performing a federal function pursuant to a statutory directive. The fact that the DOD appeared before the APUC as a consumer, seeking the lowest rate for the services it receives, does not convert the DOD's intervention into "nongovernmental" participation.

APUC next argues that because it did not interfere with DOD's performance as an intervenor, there was no state interference with the performance of a federal duty. However, APUC's view of "interference" in the context of the Supremacy Clause is too narrow. In this case there is no question that at the time DOD petitioned to intervene, it had to agree to pay the allocation of hearing costs in order to receive permission to intervene. These "are money exactions the payment of which, if they are enforceable, would be required before executing a function of government. Such a requirement is prohibited by the supremacy clause." *Mayo,* 319 U.S. at 447, 63 S.Ct. at 1140; *see also United States v. Montana,* 699 F.Supp. 835, 839 (D.Montana 1988) (state building permit and fee requirements, which must be satisfied before work can proceed, placed a direct burden on United States in violation of Supremacy Clause).

APUC's attempt to distinguish *Mayo* and *Montana* on the basis that this case involves "costs," rather than a state fee or tax imposed on the federal Government or its property was properly rejected by the district court. APUC's assessment fails to pass constitutional muster because its claimed entitlement to federal funds, if granted, would impose a direct demand on the United States. *See Mayo,* 319 U.S. at 447, 63 S.Ct. at 1140; *cf. Idaho,* —— U.S. at ——, 113 S.Ct. at 1897 (1993) (distinction between "costs" and "fees" not dispositive in that case in determining if sovereign immunity was waived). Characterizing the assessment as a "cost of doing business" does not change the analysis, nor does the fact that the costs are assessed after the investigation and hearing are concluded.

█ Similarly, the fact that DOD could have protected its interests in the rate setting hearings by submitting written comments, giving oral testimony, or filing an appeal with the Alaska Supreme Court, does

not change the analysis. Under Section 481(a)(4) the federal Government has the discretion to determine "the extent" of participation necessary to represent federal interests efficiently and effectively in state regulatory proceedings. DOD correctly points out that APUC's views regarding the effectiveness of these other options are constitutionally irrelevant in this case. "[A] State is without power by reason of the Supremacy Clause to provide the conditions on which the Federal Government will effectuate its policies. Whether the federal policy is a wise one is for the Congress and the Chief Executive to determine." *United States v. Georgia Pub. Serv. Comm'n,* 371 U.S. 285, 293, 83 S.Ct. 397, 402, 9 L.Ed.2d 317 (1963).

■ As the district court observed, the United States' invocation of the Supremacy Clause in this case has triggered the hard rules which dictate the decision in this case. This decision must be made in spite of the letter to the APUC from the United States in which it acknowledged the authority of the APUC to allocate costs and agreed to accept the potential liability of paying its fair share of the expenses of the hearings, and a 1978 decision by the Comptroller General [2] that no issue of sovereign immunity or of federal supremacy is present in a case like this. The 1978 opinion of the Comptroller General, which is not authority binding on this court, is distinguishable because it was based primarily on an incorrect view of estoppel theory, contains an incorrect analysis of the Supremacy Clause, and was issued long before the Supreme Court's decision in *Idaho.*

We conclude that the district court was correct in deciding that the imposition of costs against the federal government pursuant to AS 42.05.651 is invalid under the Supremacy Clause. *Mayo* compels that result. In view of this determination, we need not address the APUC's contention that the Anti–Deficiency Act, 31 U.S.C. § 1341, does not prohibit the allocation of reasonable hearing costs to the DOD. Nor need we address APUC's argument that the United States should be estopped from refusing to pay the

assessment it voluntarily agreed to assume in its petitions to intervene.

We note that it is unclear to what extent, if any, the facts underlying this case would provide a basis for a takings claim, or a Tucker Act or Federal Tort Claims Act action against the United States. Because the State of Alaska has made no such claims in this case, we express no opinion on those subjects.

## IV.

## CONCLUSION

The DOD represented to APUC that it would bear its share of the cost of the rate hearings. The United States did not, however, waive its sovereign immunity. The district court correctly held that the application of AS 42.05.651 to the United States is an unconstitutional exercise of state power because it violates the Supremacy Clause. We therefore cannot force the federal Government to live up to its representation, but we also cannot admire its posture in this case. "Great nations, like great men, should keep their word." *Federal Power Comm'n v. Tuscarora Indian Nation,* 362 U.S. 99, 142, 80 S.Ct. 543, 567, 4 L.Ed.2d 584 (1960) (Black, J., dissenting).

The district court's order denying APUC's motion to dismiss and its cross-motion for summary judgment and granting the DOD's motion for summary judgment is AFFIRMED. No costs allowed.

2. Comptroller General Opinion B–190630, In the Matter of: Payment of Costs by the United States for Intervening in Proceedings of Alaska Public Utilities Commission (April 14, 1978).