RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0131p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

PORTSMOUTH AMBULANCE, INC.; KENNETH BOGGS,

*Plaintiffs-Appellants,*

*v.*

No. 13-3826

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:12-cv-00774—Timothy S. Black, District Judge.

Decided and Filed:  June 25, 2014

Before:  DAUGHTREY, CLAY, and STRANCH, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:**  Joseph J. Braun, Stephen E. Schilling, STRAUSS TROY CO., LPA, Cincinnati, Ohio, for Appellants.  Bridget M. Rowan, Christine D. Mason, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

### OPINION

_____

MARTHA CRAIG DAUGHTREY, Circuit Judge.  The plaintiffs, Portsmouth Ambulance, Inc., and Kenneth Boggs, appeal the district court's ruling granting the motion of the United States to dismiss the plaintiffs' claim for damages for the alleged wrongful collection of employment taxes, as well as their claim for a refund of certain tax payments made to the Internal Revenue Service (IRS).  The plaintiffs' challenge to the district court's dismissal of the damages claim is patently without merit.  Furthermore, well-reasoned circuit precedent supports

1

the district court's conclusion that the plaintiffs did not properly invoke the jurisdiction of the federal courts to challenge the allocation by the IRS of payments made to satisfy corporate tax liabilities. We thus affirm the judgment of the district court.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Prior to October 2006, Joy Irwin and Sherri Fannin owned and operated Portsmouth Ambulance, Inc., and Urgent Care Transport, Inc., two separate Ohio businesses. In 2000, 2002, and 2005, Irwin and Fannin failed to remit to the IRS the federal employment taxes and corporate income taxes for which Urgent Care was liable, resulting in the IRS filing and recording tax liens against Urgent Care in March 2003 and March 2007.

Seeking to improve their financial position, Irwin and Fannin entered into a stock-purchase-agreement on October 30, 2006, with a group of investors that included plaintiff Kenneth Boggs. Pursuant to that agreement, Irwin and Fannin transferred 86 percent of the Portsmouth Ambulance stock to the new owners, retaining ownership of the remaining 14 percent of the stock. The agreement also accorded the new Portsmouth Ambulance owners an option to purchase the stock of Urgent Care. Approximately ten months later, on September 5, 2007, Portsmouth Ambulance exercised that option, obtained all shares of Urgent Care stock, purchased certain assets of Urgent Care, assumed some of Urgent Care's existing debt, and converted Urgent Care into a wholly-owned subsidiary of Portsmouth Ambulance.

Following the new owners' exercise of their option to purchase Urgent Care's stock, Irwin and Fannin notified the IRS of the change in the company's ownership. Because of Urgent Care's outstanding tax liability, the IRS ordered a sale of Urgent Care's assets in an effort to cure that deficiency. The sale did not raise sufficient revenues, however, and Urgent Care was left with a remaining tax liability of $222,079.68, excluding penalties and interest.

Unfortunately, the financial situation of Portsmouth Ambulance under its new owners did not fare much better. The new owners failed to pay the corporation's federal employment taxes for each quarter of 2008, and notices of federal tax liens were filed and recorded against that

corporation on October 27, 2008 (for $356,806.76), on January 6, 2009[1] (for $147,830.07), and on May 4, 2009 (for $169,095.34). A fourth notice of federal tax lien (for $36,382.51) was filed and recorded against Portsmouth Ambulance on February 9, 2009, as a result of the company's failure to file its W-2 forms. Also on January 6, 2009, the IRS filed a notice of federal tax lien against Portsmouth Ambulance *as the alter ego of Urgent Care*, in an effort to collect the tax liability still due and owing from Urgent Care. Because plaintiff Boggs, the responsible corporate officer of Portsmouth Ambulance, did not remit payroll taxes for five quarters in calendar years 2008 and 2009, the IRS also assessed civil penalties against him totaling $311,407.54.

Given the dire financial straits in which Portsmouth Ambulance found itself, a creditor bank sold the company's assets on June 18, 2009, for one million dollars, and Portsmouth Ambulance ceased its business operations. From the proceeds of the asset sale, a total of $636,587.40 was remitted to the IRS. The government agency applied $333,769.24 of that amount to Urgent Care's tax liabilities, resulting in the release of the tax lien against that corporation. The remaining $302,818.16 was used to reduce, but not eliminate, Portsmouth Ambulance's own tax liability. Not surprisingly, Portsmouth Ambulance objected to the IRS's allocation of the sale proceeds, arguing that it was not the alter ego of Urgent Care and that the $636,587.40 remitted to the IRS should have been applied to satisfy only the obligation that Portsmouth Ambulance itself still had to the agency.

Portsmouth Ambulance and Kenneth Boggs filed refund claims with the IRS. Portsmouth Ambulance sought a refund of the payments that had been applied to eliminate the tax liability of Urgent Care rather than of Portsmouth Ambulance. Boggs hoped to recoup the civil-penalty payment he made to the IRS that he asserted should have been satisfied from the sale proceeds of Portsmouth Ambulance's assets. However, those claims either were denied or were not addressed by the agency, leading the plaintiffs to file suit in federal district court, seeking the requested refund payments and damages for the government's allegedly improper prosecution of a collection action. The plaintiffs purported to invoke the jurisdiction of the

---

[1]For some reason, both parties and the district court refer to a January 2, 2009, notice of federal tax lien. The appellate record reflects clearly, however, that the notice of lien was not prepared until January 6, 2009, and was received and filed by the county recorder that same day at 3:36 p.m., not on January 2, 2009.

district court pursuant to the provisions of 28 U.S.C. § 1346(a)(1), but the IRS moved for dismissal of the plaintiffs' complaint, arguing both that the district court lacked subject-matter jurisdiction over the refund claim under § 1346(a)(1) and that the plaintiffs' claim for damages was untimely.

The district court agreed with the government, granted its motion, and dismissed the plaintiffs' claims. In doing so, the district court determined that Congress, by enacting 26 U.S.C. §§ 6325(b)(4) and 7426(a)(4), established an exclusive procedure to be used to seek refunds for satisfaction of a tax lien by a property owner with respect to another party's tax liability. Specifically, a party in such a position must request a certificate of discharge of the tax lien upon payment of the value of the lien. *See* 26 U.S.C. § 6325(b)(4). Only then, within 120 days of the issuance of that certificate, may the party challenge in court the IRS's determination of the value of the lien on the property in question. *See* 26 U.S.C. § 7426(a)(4). Because the plaintiffs did not avail themselves of those specified procedures to bring suit against the United States, the district court concluded that it was without subject matter jurisdiction to entertain the refund claims.

The district court also ruled that the plaintiffs' request for damages was time-barred. Pursuant to the provisions of 26 U.S.C. § 7433, a suit for damages based upon an allegedly unauthorized collection action must be filed within two years of the accrual of that cause of action. Because the plaintiffs failed to comply with that timing requirement, the district court concluded that the plaintiffs were precluded from advancing their damages claim in court. Portsmouth Ambulance and Boggs now appeal those adverse determinations.

## II. DISCUSSION

### A. Dismissal of Plaintiffs' Refund Claims Made in Counts I and II of the Complaint

In their first issue on appeal, the plaintiffs assert that the district court erred in dismissing their cause of action for a refund of tax payments for failure to comply with the provisions of 26 U.S.C. §§ 6325(b)(4) and 7426(a)(4). We review *de novo* a district court's dismissal of a cause of action for lack of subject matter jurisdiction. *Harkness v. United States*, 727 F.3d 465, 469 (6th Cir. 2013) (citing *Taylor v. Geithner*, 703 F.3d 328, 332 (6th Cir. 2013)). The

government's motion to dismiss on lack of subject matter jurisdiction does not challenge the factual basis of the plaintiffs' claims.  Rather, the motion presents a facial attack that "questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citation omitted).  In such situations, we take "the allegations in the complaint as true," and "[i]f those allegations establish federal claims, jurisdiction exists." *Id.*

The plaintiffs' complaint names the United States as a defendant; however, the principle of law is well established that the government may not be sued without its consent.  *See, e.g., S. Rehab. Grp., PLLC v. Sec'y of Health & Human Servs.*, 732 F.3d 670, 676 (6th Cir. 2013) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  Moreover, only Congress may waive that immunity, and all "waivers of federal sovereign immunity must be unequivocally expressed in the statutory text . . ., must be strictly construed in favor of the United States, . . . and [may] not [be] enlarged beyond what the language of the statute requires." *United States v. Idaho ex rel. Dir., Idaho Dep't of Water Res.*, 508 U.S. 1, 6-7 (1993) (citations and internal quotation marks omitted).  "[W]here Congress has consented to suit against the government, it may define the terms and conditions under which it is willing to allow the United States to be sued." *S. Rehab. Grp., PLLC*, 732 F.3d at 676-77 (citing *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273 (1983)).

At first blush, the plain language of 28 U.S.C. § 1346(a)(1), the jurisdictional provision upon which the plaintiffs rely to support the federal courts' authority to decide the issues raised in this matter, appears to be expansive enough to vest the district court with jurisdiction over the plaintiffs' tax-refund suit against the government.  Pursuant to that statutory section, original jurisdiction is granted to the district courts over

> [*a*]*ny* civil action against the United States for the recovery of *any* internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or *any* penalty claimed to have been collected without authority or *any* sum alleged to have been excessive or in *any* manner wrongfully collected under the internal-revenue laws.

(Emphasis added.)     However, "[d]espite its spacious terms, § 1346(a)(1) must be read in conformity with other statutory provisions which qualify a taxpayer's right to bring a refund suit upon compliance with certain conditions."  *United States v. Dalm*, 494 U.S. 596, 601 (1990).

If this cause of action had accrued prior to 1998, the plaintiffs' assertion that their claims were cognizable by the district court pursuant to 28 U.S.C. § 1346(a)(1) would have found support in the United States Supreme Court's decision in *United States v. Williams*, 514 U.S. 527 (1995).  Like the instant case, *Williams* involved a situation in which a plaintiff sought a refund of taxes paid in order to release a lien placed upon property by the IRS as a result of non-payment of obligations *by a third party*.  Although the government argued in *Williams* that § 1346(a)(1) "authorizes actions only by the assessed party," *id.* at 531, the Court disagreed and, referencing the broad language of § 1346(a)(1), noted that were an alleged property owner like Williams unable to challenge the tax lien placed on that realty by the IRS because of a third party's nonpayment of taxes, she would be left without a remedy to free her property from its titular cloud. *Id.* at 529.

In response to the Court's recognition in *Williams* that federal law did not provide an explicit remedy for persons in Williams's position, "Congress amended the Internal Revenue Code in 1998 to provide the specific remedy that the *Williams* Court had found lacking." *Munaco v. United States*, 522 F.3d 651, 654 (6th Cir. 2008).  Those "new" code provisions, 26 U.S.C. § 6325(b)(4)[2] and 26 U.S.C. § 7426(a)(4)[3], now enable an individual like Williams, or

---

[2]Subsection (b)(4) of 26 U.S.C. § 6325 provides:

(A) At the request of the owner of any property subject to any lien imposed by this chapter, the Secretary shall issue a certificate of discharge of such property if such owner–

    (i) deposits with the Secretary an amount of money equal to the value of the interest of the United States (as determined by the Secretary) in the property; or

    (ii) furnishes a bond acceptable to the Secretary in a like amount.

(B) The Secretary shall refund the amount so deposited (and shall pay interest at the overpayment rate under section 6621), and shall release such bond, to the extent that the Secretary determines that–

    (i) the unsatisfied liability giving rise to the lien can be satisfied from a source other than such property; or

    (ii) the value of the interest of the United States in the property is less than the Secretary's prior determination of such value.

(C) If no action is filed under section 7426(a)(4) within the period prescribed therefor, the Secretary shall, within 60 days after the expiration of such period–

a business entity like Portsmouth Ambulance, to challenge a lien placed upon a plaintiff's property as a result of a tax liability incurred by another party. As we explained in *Munaco*:

> Under the new statutory scheme, 26 U.S.C. § 6325(b)(4) requires the IRS to issue a certificate of discharge as a matter of right to third parties under specified circumstances. Pursuant to 26 U.S.C. § 6325(b)(4)(A), the third party has the right to obtain a certificate of discharge by applying to the Secretary of the Treasury for such a certificate and either depositing cash or furnishing a bond sufficient to protect the lien interest of the United States. The Secretary does not have the discretion to refuse to issue a certificate of discharge if this procedure is followed. After the property owner follows the procedure under 26 U.S.C. § 6325(b)(4)(A), the Secretary must refund the amount deposited or release the bond, to the extent that the Secretary determines that the taxpayer's unsatisfied liability giving rise to the lien can be satisfied from a source other than property owned by the third party, or the value of the interest of the United States in the property is less than the Secretary's prior determination of its value. 26 U.S.C. § 6325(b)(4)(B).
>
> Section 7426(a)(4) provides a judicial remedy for violations of § 6325(b)(4). The owner of the property has 120 days after the certificate is issued to challenge the Secretary's determination by bringing a civil action against the United States in federal district court. *Id.* § 7426(a)(4). If no action is filed within the 120-day period, the Secretary has 60 days to apply the amount deposited or collected on the bond, to the extent necessary to satisfy the unsatisfied liability secured by the lien and refund any amount which is not used to satisfy the liability. *Id.* § 6325(b)(4)(C). If an action is filed and the court determines that the value of the interest of the United States in the property is less than the value that the Secretary determined, the court will grant a judgment ordering the refund of the amount of the deposit or a release of the bond to the extent that the amount of the deposit or bond exceeds the value determined by the court. *Id.* § 7426(b)(5). That statute states clearly that "[n]o other action may be

---

> (i) apply the amount deposited, or collect on such bond, to the extent necessary to satisfy the unsatisfied liability secured by the lien; and
>
> (ii) refund (with interest as described in subparagraph (B)) any portion of the amount deposited which is not used to satisfy such liability.
>
> (D) Subparagraph (A) shall not apply if the owner of the property is the person whose unsatisfied liability gave rise to the lien.

[3]Pursuant to the provisions of 26 U.S.C. § 7426(a)(4):

> If a certificate of discharge is issued to any person under section 6325(b)(4) with respect to any property, such person may, within 120 days after the day on which such certificate is issued, bring a civil action against the United States in a district court of the United States for a determination of whether the value of the interest of the United States (if any) in such property is less than the value determined by the Secretary. No other action may be brought by such person for such a determination.

brought by such person for such a determination." *Id.* § 7426(a)(4). Plaintiffs must exhaust these administrative remedies prior to bringing suit for damages. *See id.* § 7426(h)(2).

*Munaco*, 522 F.3d at 654-55 (footnotes omitted).

In this case, the plaintiffs do not dispute the manner in which §§ 6325(b)(4) and 7426(a)(4) operate in theory. Rather, they raise four arguments in support of their position that the strictures of § 6325(b)(4) should not be applied in this matter.

**1. Treatment of Portsmouth Ambulance as Urgent Care's Alter Ego**

The plaintiffs emphasize that 26 U.S.C. § 6325(b)(4), and the corresponding provisions of 26 U.S.C. § 7426(a)(4), govern the payment only of a *third party's* tax liability in order to obtain a discharge of property. *See* 26 U.S.C. § 6325(b)(4)(D) (discharge provisions do not apply if owner of property is person whose unsatisfied liability gave rise to lien). They thus maintain that Portsmouth Ambulance's $636,587.40 payment to the IRS cannot be viewed as satisfaction of a third party's liability because the IRS itself considered Portsmouth Ambulance and Urgent Care to be a single entity, as shown by the agency's recording of an alter-ego lien against Portsmouth Ambulance. However, such an argument betrays a misunderstanding both of the facts of this case and of the law applicable to them.

From a purely logical, factual standpoint, it is clear that the IRS treated Portsmouth Ambulance and Urgent Care as separate business entities, despite the filing and recording of the alter-ego lien. Upon the transfer of a portion of the proceeds of the sale of Portsmouth Ambulance's assets to the IRS, the agency applied $333,769.24 of those proceeds to release the lien against Urgent Care and erase completely the tax liability of that corporation. Even after the application of the remaining $302,818.16 to Portsmouth Ambulance's tax liability, however, that separate business entity still was found to be in arrears in its obligations to the IRS. If the IRS had considered Urgent Care and Portsmouth Ambulance to be a single entity, no lien release could have been effected upon payment of the $333,769.24, because the tax liability of the "single entity" would have exceeded the total payment remitted from the sale of Portsmouth Ambulance's assets. Thus, the very fact that the IRS released the lien against Urgent Care

establishes that the agency considered Urgent Care and Portsmouth Ambulance to be separate legal entities for purposes of tax assessment.

Furthermore, citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977), we have explained that the mere application of an alter-ego appellation does not transform separate individuals or companies into a single entity. Indeed, we recognized in *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005), that the lien provision of the Internal Revenue Code, 26 U.S.C. § 6321, includes "not only the property and rights to property owned by the delinquent taxpayer, but also the property held by a third party if it is determined that the third party is holding the property as a nominee or alter ego of the delinquent taxpayer."

Both legally and factually, therefore, the IRS treated Portsmouth Ambulance and Urgent Care as separate entities for *tax-assessment purposes*, even though Portsmouth Ambulance was deemed to be the alter ego of Urgent Care for *collection purposes*. The plaintiffs' initial challenge to the application of 26 U.S.C. § 6325(b)(4) to their situation is thus without merit.

## 2. Urgent Care's Receipt of a Lien Release Pursuant to 26 U.S.C. § 6325(a)

The plaintiffs next assert that the provisions of 26 U.S.C. § 6325(b)(4) (and thus 26 U.S.C. § 7426(a)(4), which provides a § 6325(b)(4) cause of action) are not applicable to this case because the IRS, upon application of the Portsmouth Ambulance-asset-sale proceeds to Urgent Care's tax liability, issued a release of a lien under 26 U.S.C. § 6325(a), not a certificate of discharge under 26 U.S.C. § 6325(b). While it is true that the plaintiffs did not receive a § 6325(b) certificate of discharge from the IRS, the reason they did not is not, as the plaintiffs intimate, because payment of a tax liability for a third party could never result in issuance of such a certificate under these circumstances.

By its unambiguous language, 26 U.S.C. § 7426(a)(4) provides the exclusive remedy for a third-party property owner like Portsmouth Ambulance to obtain a refund for payments made to satisfy the tax liability of another entity. To avail oneself of that remedy, however, the party satisfying the tax liability of another first must obtain a certificate of discharge under § 6325(b)(4) of the Internal Revenue Code. But such a certificate of discharge must be *requested* by the third-party property owner. Upon receipt of such a request, the IRS *must* issue

the certificate if such owner deposits money equal to the value of the IRS′s interest in the property.  26 U.S.C. § 6325(b)(4)(A).  Because Portsmouth Ambulance never requested a discharge certificate in this matter, the IRS was unable to issue the document that would permit the district court to exercise subject-matter jurisdiction over the plaintiffs' claims.

In short, the plaintiffs are correct that the IRS released the lien placed against Urgent Care for nonpayment of taxes, rather than issuing Portsmouth Ambulance a certificate of discharge of property.  The non-issuance of that discharge certificate, however, was solely the result of Portsmouth Ambulance's failure to take the necessary steps to preserve its ability to seek a refund of its tax payments.

### 3. Portsmouth Ambulance's Alleged Inability to Procure a Certificate of Discharge

The plaintiffs insist, however, that it was impossible for Portsmouth Ambulance to avail itself of the process detailed in 26 U.S.C. § 6325(b).  Portsmouth Ambulance argues that it could not comply with the provisions of 26 U.S.C. § 6325(b)(4) and request a certificate of discharge because, immediately upon receipt of the proceeds of the sale of Portsmouth Ambulance's assets, the IRS, having then received full payment of Urgent Care's tax deficiency, issued a § 6325(a) release of the Urgent Care tax lien.  Pursuant to the plain language of 26 U.S.C. § 6325(b)(4), a certificate of discharge can be issued only upon the request of an owner "of any property subject to any lien imposed by this chapter."  Thus, once the lien against Urgent Care was released, there was no longer any property in which Portsmouth Ambulance had an interest that was "subject to any lien imposed" by the IRS.

The plaintiffs are correct that, at the time of the release of the lien, the procedures envisioned by 26 U.S.C. § 6325(b)(4) were no longer a viable alternative for Portsmouth Ambulance.  But of course, as argued persuasively by the United States, Portsmouth Ambulance had a five-month window between the January 2009 filing of the alter-ego lien and the June 2009 bank-ordered sale of Portsmouth Ambulance's assets during which Portsmouth Ambulance could have availed itself of the process envisioned by 26 U.S.C. § 6325(b)(4).  Although it is no doubt true that when a company like Portsmouth Ambulance finds itself in a financial bind, it oftentimes cannot obtain the resources necessary to satisfy a tax deficiency prior to an actual asset sale, 26 U.S.C. § 6325(b)(4) also allows a third-party to "furnish[ ] a bond acceptable to the

Secretary" in lieu of raising the cash necessary to secure a certificate of discharge. *See* 26 U.S.C. § 6325(b)(4)(A)(ii). The plaintiffs here, however, failed to take advantage of even that alternative method.

There is no doubt that a result like that reached by the district court in this matter will be viewed as draconian by some. However, Congress has chosen to waive the sovereign immunity of the government from suit for refund claims only in certain severely circumscribed instances. Despite any perceived harshness in the result, we must construe that waiver strictly in favor of the government. No matter how difficult the plaintiffs deem compliance with the statutory requirements to be, we and they are not at liberty to expand the options for suits against the sovereign.

### 4. Applicability of *Munaco*

In a final challenge to the dismissal of their refund claim, the plaintiffs argue that the district court's reliance on our prior opinion in *Munaco* was misplaced and, instead, that the district judge should have adopted the reasoning of the United States District Court for the Northern District of Ohio set out in *Reaser v. United States*, 731 F. Supp. 2d 681 (N.D. Ohio 2010). However, a decision of a district court is not binding on us, especially if such a district court ruling conflicts with existing circuit precedent.

Moreover, despite the plaintiffs' claims to the contrary, *Munaco* and *Reaser* cannot be distinguished solely on the basis of the type of tax relief involved in the two cases. In fact, like *Munaco*, *Reaser* also involved a situation in which payments were made by a third party to effect the release of a lien and did not involve a request by the payer for discharges of a lien-encumbered property. Second, the district court in *Reaser* incorrectly sought to distinguish *Munaco* on the basis that, in *Reaser*, but not *Munaco*, "the IRS treated the plaintiffs' cash bond as a payment to *release* (that is, completely extinguish) the underlying lien against *Reaser* Enterprises–not a payment to *discharge* the parcels from that lien while leaving the lien intact against Reaser Enterprises's other assets." *Reaser*, 731 F. Supp. 2d at 683. *Munaco* also involved the release of a lien rather than a discharge of property. Indeed, in both *Munaco* and *Reaser*, the IRS had no choice but to treat the payments made to it as *releases* of the liens

because the respective payers failed to make the requests for the certificates that are prerequisites for *discharges* of property.

None of the plaintiffs' attacks on the district court's jurisdictional ruling in this case have merit. Rather, binding Sixth Circuit precedent establishes that the district court correctly "concluded that it lacked jurisdiction under § 1346(a)(1) to hear 'refund suits brought by third party real property owners who wish to challenge tax lien-related collections by the IRS and who have not pursued the remedy provided to them by §§ 6325(b)(4) and 7426(a)(4).'" *Munaco*, 522 F.3d at 656 (quoting *Four Rivers Invs., Inc. v. United States*, 77 Fed. Cl. 592, 603 (Fed. Cl. 2007)).

**B. Dismissal of Plaintiffs' Damages Claim Made in Count III of the Complaint**

In Count III of their complaint, the plaintiffs claimed that they were entitled to damages from the government for the IRS's prosecution of an allegedly unlawful collection action. The district court concluded, however, that the claim was time-barred and, thus, dismissed that cause of action as well. The plaintiffs now assert that the district court's determination in that regard was in error.

Except in limited circumstances not relevant to this appeal, 26 U.S.C. § 7433 provides "the exclusive remedy for recovering damages" for unauthorized collection actions. 26 U.S.C. § 7433(a). Such an action "may be brought only within 2 years after the date the right of action accrues." 26 U.S.C. § 7433(d)(3). Significantly, however, a taxpayer must have "exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service" prior to instituting any civil proceeding in federal court. 26 U.S.C. § 7433(d)(1). Paramount among those prerequisites is the need to file an administrative claim with the agency. *See* 26 C.F.R. § 301.7433-1(a). Additionally, 26 C.F.R. § 301.7433(d) provides that no action may be maintained in federal district court until a decision is rendered on the administrative claim, 26 C.F.R. § 301.7433(d)(1)(i), or, if earlier, six months have passed since the filing of the administrative claim, 26 C.F.R. § 301.7433(d)(1)(ii). Of relevance to this appeal, 26 C.F.R. § 301.7433(d)(2) also provides that "[i]f an administrative claim is filed . . . during the last six months of the period of limitations . . ., the taxpayer may file an action in federal district court

any time after the administrative claim is filed and *before the expiration of the period of limitations*." (Emphasis added.)

The plaintiffs and the IRS agree that any cause of action for damages in this matter would have accrued on January 6, 2009, the date on which the IRS filed the lien against Portsmouth Ambulance as the alter ego of Urgent Care. Consequently, the plaintiffs' federal complaint should have been filed no later than January 2011. However, the plaintiffs did not file their initial court pleading with the district court until October 10, 2012. The plaintiffs nevertheless assert that their complaint was filed with the district court in a timely manner because they did not lodge their administrative claim with the IRS until November 5, 2010, a date within the last six months of the initial two-year period for filing an action in federal court.

According to the plaintiffs, after thus satisfying the administrative timing requirement, they were entitled to file their § 7433 action at *any time* thereafter. We conclude that such an interpretation of the regulations implementing 26 U.S.C. § 7433 is patently unreasonable. The reference in 26 C.F.R. § 301.7433-1(d)(2) to allowable filings "during the last six months of the period of limitations" is not meant to extend indefinitely the period for initiating actions in federal court. Instead, subsection (d)(2) of the regulation was promulgated to provide an alternative exhaustion mechanism for individuals who could not wait for an administrative decision or for six months from the filing of an administrative claim before the expiration of the statutory limitations period. Regardless of when during the two-year period established in 26 U.S.C. § 7433(d)(3) a taxpayer files an administrative claim, such an entity still must file its federal-court complaint within two years after the date on which the cause of action accrued. The plaintiffs' failure to do so in this case justified the district court's dismissal of their damages claim.

### III. CONCLUSION

Waivers of the federal government's immunity from suit must be construed strictly in favor of the government. Congress has seen fit to allow refund suits against the IRS brought by third parties challenging tax-lien-related collections only under the circumscribed procedures detailed in 26 U.S.C. §§ 6325(b)(4) and 7426(a)(4). We recognized as much in *Munaco*. The plaintiffs' failure to comply with the requirements of those statutory provisions justified the

district court in concluding that it was without jurisdiction to entertain the causes of action alleged by Portsmouth Ambulance and Boggs.  The district court also correctly concluded that the plaintiffs did not file their suit for civil damages within the limitations period set forth in the relevant statute.  We thus AFFIRM the judgment of the district court dismissing the plaintiffs' claims.