

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. AP-77,087

### DILLION GAGE COMPTON, Appellant

### v.

### THE STATE OF TEXAS

### ON DIRECT APPEAL FROM CAUSE NO. 011545 IN THE 259TH DISTRICT COURT JONES COUNTY

**WALKER, J., filed a concurring opinion.**

### <u>CONCURRING OPINION</u>

While I agree with the Court's decision to affirm Appellant Dillion Gage Compton's conviction and sentence, I cannot join Part I.C. of the Court's opinion, on Appellant's seventh and eighth points of error relating to the prosecutor's improper comments during voir dire to six of the jurors. I also wish to comment on his ninth point of error that counsel provided ineffective assistance of counsel for failing to object to those improper comments.

### I — The Comments in This Case

During individual voir dire, the State told juror Tittle:

You know, I think at the end of the day if the Defendant was convicted in this case, I think one thing for sure the Defense wants to make sure they have a juror that can consider life without parole, and certainly the Prosecution and the victim's family wants to make sure we have a juror that can also consider the death penalty.

The State also asked Tittle:

Q.   . . . [d]o you have any concerns that you might not be able to vote for the death penalty when that moment comes?
A.   I have no concerns, no.
. . .
Q.   But do you agree with me that's something I've got to know –
A.   Yes, sir.
Q.   – as the prosecutor? That's something that the victims have to know?
A.   Uh-huh.
Q.   Right? That if that moment came it wouldn't be justice for this victim's family to know that that moment came and you weren't able to go through with it, right?

To juror Mitchell, the State said: "Victims obviously are going to be looking for justice in this case. And I worry about that situation where you're not sure about that. It sounds like you may be a little bit conflicted [about whether Mitchell could sentence someone to death]."

The State asked juror Gambrell:

Would it be fair to the people of the great State of Texas and the victim's family in this case if we sat twelve people over here that said, even though we found the Defendant guilty beyond a reasonable doubt and even though we find he's a future danger to society and he's a continuing threat to society we will never give the death penalty?

The State asked juror Vinson:

Q.   And from our standpoint, it wouldn't be fair to have a jury – you know, we've got several weeks of trial and the victim's family wanting closure and we've got a juror that says, "You know what? I thought I could do the death penalty, but now that I'm right at that point, I don't think I can go through with it." That wouldn't be a fair trial either, would it?
A.   No, sir.
Q.   Would that be fair to the victims or the State to let someone's personal beliefs come in and say, "Man, I just – I can't do it"? So I'll ask you that question:

Is there any concern that you could be the type that as you're sitting up there that your personal feelings about the death penalty one way or the other might interfere with your ability to make a decision based on the evidence in this courtroom?

To juror Jones, the State asked "It's not fair to the State or the victims. Would you agree with me that they thought they had gotten to this point of closure and then this [juror who cannot impose a death sentence] pops up, right?"

And the State asked juror Mayfield:

And would you agree with me that it wouldn't be fair to the victim or the victim's family or some would say society if we had twelve people sitting over here that said, "I don't care how bad the case was, I don't care how bad of a person this is, I could never, ever, ever vote death penalty." That wouldn't be fair either, would it?

In his seventh and eighth points of error, Appellant complains that these six jurors were implicitly told that the victim's family wanted the death penalty.

## II — *Draughon*

The Court concludes that Appellant's seventh and eighth points of error are not preserved for review because he did not object to the improper prosecutor's comments in voir dire. To support the requirement of a contemporaneous objection, the Court quotes the opinion in *Draughon v. State*, in which the Court held that a point of error relating to an improper comment during voir dire was not preserved by an objection. 831 S.W.2d 331, 336–37 (Tex. Crim. App. 1992). In that case, the Court stated that "a curative instruction could easily have dissipated any potential for prejudice visited upon [Draughon]." *Id.* at 337. In the abstract, this makes sense: we have long emphasized that

[t]o avoid forfeiting a complaint on appeal, the party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it."

*Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009); *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992). "This gives the trial judge and the opposing party an opportunity to correct the error." *Pena*, 285 S.W.3d at 464 (citing *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005)).

If a prosecutor makes an improper comment during voir dire, the defense should call it to the trial court's attention at that time because the trial court can take certain measures, including giving the venire panel an instruction to remedy the problem. *Draughon*, 831 S.W.2d at 337. The trial court could also afford counsel an opportunity to ask the venire panel whether the prosecutor's improper comment would affect their deliberations. *Id.*

Certainly, that could be said for the improper comment in *Draughon*. There, the prosecutor characterized the victims and their families as the prosecutor's "clients." *Id.* at 336. The trial court could have, in response to an objection, told the jury to disregard the comment or even told the jury that the victims and their families were not the prosecutor's clients. The trial court could have also allowed defense counsel to question the jury about how the remark could have affected them. *Id.* at 337.

### III — Death is Different

But the improper comment in *Draughon*—that the victims and their families were the prosecutor's "clients"—is worlds' apart from a comment, *in a death penalty case*, suggesting that *the victim's family wants the defendant to get the death penalty*. Not only is that kind of information inadmissible, *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), it violates the Eighth Amendment of the Constitution. As the Supreme Court explained, information about the family members' opinions and characterizations of the crimes violates the Eighth Amendment, because:

> the formal presentation of this information by the State can serve no other purpose than to inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant. As we have noted, any decision to impose the death sentence must "be, and appear to be, based on reason rather than caprice or emotion." The admission of these emotionally charged opinions as to what conclusions the jury should draw from the evidence clearly is inconsistent with the reasoned decisionmaking we require in capital cases.

*Booth v. Maryland*, 482 U.S. 496, 508–09 (1987), *overruled in part by Payne v. Tennessee*, 501 U.S. 808, 829 (1991) (quoting *Gardner v. Florida*, 430 U.S. 349, 358 (1977) (plurality op.)); *see also Bosse v. Oklahoma*, 508 U.S. 1, 3 (2016) (courts "remain[] bound by *Booth*'s prohibition on characterizations and opinions from a victim's family members about the crime, the defendant, and the appropriate sentence").

I do not share the Court's optimism that, in a death penalty case, a curative instruction could easily dispel any potential prejudice caused by a prosecutor's improper comment that the victim's family wants the death penalty. Jurors in a death penalty case cannot so easily shrug off what the victim's family or friends want simply because the trial court tells them to. Information that the victim's family and friends—the people who have been harmed by the defendant—want the death penalty appeals to an innate, primal sense of justice and gets away from reasoned, dispassionate decision making. It is emotionally charged and inflammatory. *Booth*, 482 U.S. at 509. Such information is the proverbial skunk in the jury box.

The same cannot be said about a prosecutor's remark that the victims and their families are the prosecutor's "clients." That improper remark did not and could not rise to the level of a constitutional violation; it was simply incorrect. *Draughon*, 831 S.W.2d at 336 ("The prosecuting attorney in a criminal action does not represent a private interest. . . . Any contrary suggestion, communicated to a juror or prospective juror in the case, therefore, is erroneous[.]"). No emotions.

No inflaming. No skunks.

## IV — But Still Not Preserved

Although I disagree that *Draughon*'s statement directly translates to a death penalty case, I nevertheless agree that *Draughon*'s holding applies, and Appellant's seventh and eighth points of error were not preserved for review because he failed to object. *See Draughon*, 831 S.W.2d at 336–37. Indeed, because the *introduction of actual evidence* of the victim's family's desires is subject to preservation requirements, *see Simpson*, 119 S.W.3d at 272 n.9, a prosecutor's improper comment in voir dire should also require an objection.

## V — Deficient Performance

I briefly want to address Appellant's ninth point of error, which faults counsel for failing to object to the prosecutor's improper comments. The Court resolves this point based on the lack of prejudice under *Strickland*, and I agree that the failure to object was not prejudicial. Although the prosecution made the improper comments to six of the jurors, each juror heard it only once, during voir dire, and never again throughout the trial.

But I would not let trial counsel off the hook. If counsel had objected the first time, the prosecutor hopefully would have stopped making the improper remark resulting in only one tainted juror which Appellant could have used a strike on. Instead, by not objecting, the error affected six jurors, and, if this were voir dire before the entire panel and not individual voir dire, that would have multiplied the prejudice. If that were the case, I would have found both deficient performance and prejudice.

## VI — Conclusion

Death is different. *Gardner v. Florida*, 430 U.S. 349, 357 (1977). Even if *Draughon* was

right that a curative instruction could have "easily" dissipated "any" potential prejudice by the prosecutor's comment in that case, the same cannot be said about a prosecutor's suggestion that the victim's family wants the death penalty in a death penalty case. Prosecutors must be careful not to tell the jury or even potential jurors that the victim's family or friends want the death penalty. When it comes to death, a simple instruction cannot cure-all. The smell of the skunk will linger, and the cure must be made of sterner stuff than a mere instruction from the trial court. Because the Court relies upon *Draughon*'s observation that "a curative instruction could easily have dissipated any potential for prejudice visited upon Appellant", I cannot join the Court's opinion.

With these thoughts, I respectfully concur with the Court's judgment.


Filed: April 12, 2023
Publish